# The Pittsburg & Connellsville Railroad Co. *versus* The South-west Pennsylvania Railway Co.

1. A railroad corporation, although chartered before the Act of June 19th 1871, authorizing courts of equity to regulate grade crossings, is subject to that act.

2. Under the Act of April 4th 1868, authorizing railroads to cross other railroads at grade, the crossing was subject to review by a court of equity.

3. The Act of 1868 did not give a railroad corporation an arbitrary right to cross another railroad, regardless of the rights of the corporation injured and the safety of the public.

4. Every legislative grant is made with the implied reservation that it shall not injure others.

5. Railroads being public highways, are not for all purposes private property; possessing a public character they are subject to public supervision.

6. By a railroad grant the legislature does not intend to divest itself of the police power of the state; the right to regulate railroad crossings flows from that power.

7. The 1st sect., art. 17, of Constitution of 1874, authorizing the crossing

| 77 | 173 |
|----|-----|
| 150 | 199 |
| 77 | 173 |
| 152 | 128 |
| 77 | 173 |
| 160 | 294 |
| 77 | 173 |
| 188 | 80 |
| 77 | 173 |
| 190 | 627 |
| 77 | 173 |
| 198 | 7 |
| 77 | 173 |
| 200 | 528 |
| 77 | 173 |
| 203 | ⁸183 |
| 77 | 173 |
| 209 | ⁸599 |
| 77 | 173 |
| f221 | ⁸151 |

of railroads, does not declare whether the crossing shall be at grade or not; that is left to legislative action and judicial supervision.

8. By the Act of 1871, the rights of the crossing railroad are secondary to those of that crossed, and the crossing company must show by evidence that no unnecessary injury is inflicted on the other by crossing at grade, and that such crossing cannot be reasonably avoided.

9. The intent of the Act of 1871 is to discourage grade crossings, involving danger to the public as well as injury to the company whose road is crossed.

10. Crossing at grade in this case, under the evidence, disallowed.

November 20th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Appeal from the Court of Common Pleas of *Fayette county :* In Equity. Of October and November Term 1874, No. 255.

This proceeding commenced by a bill filed April 25th 1874, by The South-west Pennsylvania Railroad Company against The Pittsburg and Connellsville Railroad Company. The bill set out :—

1. The plaintiffs were incorporated by Act of March 16th 1871, to construct a railroad by such route as the directors might select, from a point on the Pennsylvania Railroad at or near Greensburg, by way of Uniontown, to the line of the state of West Virginia, and to construct branches; the company to be regulated by the Act of February 19th 1849 (General 'Railroad Law), and its " supplements, and entitled to the advantages thereof and of all other general laws of the Commonwealth's relative to railroad companies, with like privileges as if organized thereunder."

2. Plaintiffs had already constructed and had in operation, that portion of its road from Greensburg to Connellsville, Fayette county, and had surveyed, permanently located, graded and ballasted ready for the ties and rails, an additional part of their road from the present terminus at Connellsville to its intersection with the defendants' railroad, " near the mouth of Mount's Creek, some distance below defendants' depot at Connellsville, which road it is proposed to cross at grade at that point, and said road had been graded from the road of the defendant southward to the Youghiogheny river."

3. At the time of the location and partial construction of plaintiffs' road to the aforesaid point, the defendants had at that place but one track; but they have since then laid one or more additional tracks.

4. The plaintiffs proposed at once to extend their road from its present terminus at Connellsville towards Uniontown and across defendants' road at grade, and had endeavored, without success, to agree with the defendants in relation thereto; on the contrary the defendants expressed a determination to resist such crossing and to prevent the plaintiffs from so doing; plaintiffs therefore feared interference with their work and resistance by the defendants, in attempting to make the crossing.

5. Any other proposed place and manner of crossing the de-

fendants' roads, would cause plaintiffs great injury, inconvenience, delay and additional expense, and a complete alteration of much of their road already constructed, and would render the further extension of their road at present impracticable.

The prayers were:—

1. For a decree authorizing, &c., the plaintiffs to proceed to construct, &c., their road over and across defendants' road at the place and in the manner aforesaid.

2. For an injunction to restrain the defendants, their officers, &c., from interfering with, &c., the construction, &c., of the plaintiffs' road over and across the defendants' road as aforesaid, and all molesting, &c.

3. For general relief.

The defendants answered:—

1. They held their charter under an Act of Assembly of Pennsylvania of April 3d 1837 and its supplements, under which their road had been built and operated for more than twenty years.

2. Their depots, turn-table, engine-houses, &c., were located at the northern end of Connellsville, within a very short distance from where the plaintiffs proposed to cross their road.

3–4. Under a contract with The Connellsville Mutual Building and Loan Association they had become owners of a lot of ground immediately below their depot and above and below the proposed crossing, for the purpose of erecting thereon carpenter, car, and other shops, and as a yard in which to stand and change their cars and locomotives; part of the buildings are erected and the others in process of construction; they are to be erected as a condition of the contract before April 1st 1873, and the lot is to revert to the association if not so erected, &c.

5, 6, 7. The proposed crossing of plaintiffs, and extension west of defendants' road, passed through the lot, cutting it nearly in the middle over the ground where the main car-shop was located, rendering it inaccessible and utterly destroying the whole for the purpose intended; the lot is absolutely necessary to defendants for conducting their business, securing the safety of passengers and property, &c., and the crossing proposed by plaintiffs was where defendants shifted their cars and locomotives, while they had several tracks, so that a crossing at grade with safety to either company would be impossible.

8. The grading mentioned in the second paragraph of the bill, was a trespass and done surreptitiously.

9, 10, 11. The Acts of Assembly authorizing a railroad to cross another at grade, did not intend to allow the crossing of depot or shop grounds; and it was "reasonably practicable for the plaintiff to avoid a grade crossing" by crossing over defendants' road a very short distance from the proposed crossing, to which defendants make no objection, &c.

Defendants resisted the crossing at grade as destructive of its property.

A replication was filed, and John D. Roddy, Esq., appointed examiner.

A number of witnesses on each side were examined before him.

The substance of the evidence by defendants' witnesses was, that the grading had been done by the plaintiffs in the spring of 1872 through defendants' lot, and between defendants' road and the river; defendants owned between 6 and 7 acres between their track and the river; they had it for the purpose of erecting shops; had some shops and dwelling-houses for their hands erected less than 100 feet from plaintiffs' road, and the location of the road crossed the foundation of additional buildings proposed to be erected; the land without improvements was worth $10,000; over $8000 had already been expended in the buildings plaintiffs proposed crossing, and extension would render the land useless for the purposes for which it had been purchased; it was absolutely necessary for defendants; they had on the lot six tracks necessary for the business of the road; if compelled to abandon the lot it would cost $50,000 to give them a favorable location elsewhere. Grade crossings were dangerous with all proper signals; whenever it is possible to cross above grade it should be done; it is expensive in construction and continually in want of repairs; there is a great difference in the wear of rolling stock. It was reasonably practicable for the plaintiffs to make a crossing above grade, about midway between the depot and the proposed crossing; the only difference would be a question of expense. The grade crossings proposed would be especially dangerous because the sight was short approaching it from all directions; the difficulty would be almost insurmountable, in consideration of defendants' shops, &c. The business of defendants was increasing every month; a full freight train was about 1000 feet long; the crossing proposed by plaintiffs would be dangerous and expensive to both parties. The buildings were commenced in 1872 and finished in 1873; about two-thirds of the lot lay between plaintiffs' road and Mount's Creek, and would require cutting and grading to make it useful in the upper part; the proposed buildings would cover from 5 to 7 acres; including this lot the defendants had about 29 acres of land; this lot was naturally better situated for shop purposes than the other; the crossing proposed by plaintiffs would render that portion west of the track useless for standing cars on; the tracks west would be injured by a grade crossing, and could not be extended without erecting a bridge at Mount's Creek. The crossing overhead would require a longer connection with defendants' road; it would not interfere with the business of the town of New Haven, which is opposite Connellsville; an ordinary grade near a depot is not a serious inconvenience. The cost to plaintiffs of a change to a crossing over

a grade would not exceed $25,000; to cross at grade would cost $5000; there would have to be a watchman night and day, and a signal station there; this crossing would be a great trouble and expense to defendants on account of the stopping of their trains, and would be especially so, so near the station and shops; the large part of the shop grounds could not be reached from below, but must be approached from above.

The substance of the testimony of plaintiffs' witnesses was: that the route of plaintiffs' road crossed the river immediately below the town of New Haven, passing through that town at grade, about 400 feet from the proposed crossing; the right of way through that town had been procured; if plaintiffs' road crossed defendants' road above grade it would injure property in that town very much, and the damages would be large; the change could not be made without great cost and delay, and would be very detrimental to the coke trade which expected to pass over plaintiffs' road, and would not be satisfactory to those expecting to do business over the road as it then was. To cross the defendants' road above grade would necessitate a new bridge over Mount's Creek; the crossing above grade would cost $24,500 more; the bridge then over Mount's Creek was ready for the superstructure; an overhead crossing would require a heavy embankment at New Haven and the removal of several houses; the then location crossed the river at grade; the bridge would be longer and have a less permanent foundation than the present; the distance for an overhead crossing would shorten the line several hundred feet. In the judgment of the witnesses a crossing above grade was not reasonably practicable and would be injurious to the interests of the road and the business community. When the final location of the extension of plaintiffs' road and crossing was made defendants had but one track; the present grade crossing was a good one, there was no objection to it and it would be no disadvantage to either road owing to the speed necessarily run from the proximity to the depot.

This synopsis, with the opinion of the court below, will sufficiently present the facts of the case.

The case was argued on the pleadings and evidence before Sterrett, P. J., of the Fifth district; he delivered the following opinion:—

"When the case came on to be heard we were under the impression that it was before us on a motion for a preliminary injunction, but at the close of the argument the learned counsel for the parties informed us that they had agreed to treat the hearing as final, on a bill, answer and testimony, and desired the court to make a final decree. It was suggested that this mode of procedure was irregular, that before a final hearing the case should

27 P. F. Smith—12

be referred to a master to find and report the facts. The counsel again stated that they had agreed and desired to submit the case, in its present shape, to the court, to determine the facts, so far as they may be deemed material, and enter a final decree. With some hesitation as to the propriety of such a course, we acquiesced in the request, and have examined the bill, answer and testimony with a view of entering a final decree.

"The facts of the case, so far as they are deemed material, are found to be as follows, to wit:—

"The South-west Pennsylvania Railway Company was duly incorporated on the 16th day of March 1871, and authorized to construct a railroad with one or more tracks, by such route as the directors might select, from some point on the Pennsylvania Railroad at or near Greensburg, in Westmoreland county, by way of Uniontown, in Fayette county, to the boundary line of West Virginia, and to construct branches. The charter also provides that, in all respects, other than those therein specified, the company shall be regulated by the Act of February 19th 1849, and the several supplements thereto, and shall be entitled to all the advantages thereof and of all other general laws of the Commonwealth relative to railroad companies, with like privileges as if organized thereunder.

"The plaintiff company was duly organized under its charter, and in pursuance of the authority contained therein constructed, and has been operating that portion of its road between the Pennsylvania Railroad at Greensburg and its present terminus at or near Connellsville in Fayette county. It has also surveyed, permanently located and proceeded to construct an additional portion of its road, extending from its present terminus at Connellsville to the intersection with the defendant company's road, near the mouth of Mount's Creek, a short distance below said company's depot, in Connellsville, and thence southward towards Uniontown. The preliminary survey of the last-mentioned portion of the plaintiff company's road, viz : from the present terminus at Connellsville, and across the defendant company's railroad and lands to the Youghiogheny river, was made on the 14th day of June 1871, and the final location of the same was made on the 28th of July following. At the time of the survey, permanent location and partial construction of its road to and at the point of the intersection and crossing of the defendant company's road, the said company defendant had at that place but one track, but since that time it has constructed additional tracks.

"It has been the intention of the plaintiff company, as speedily as possible, to extend and construct its road from the present terminus thereof at Connellsville, southward, towards Uniontown, across the defendant company's road, at grade and across its land, lying between its road and the Youghiogheny river; and in pur-

[Pittsburg & C. Railroad Co. *v.* S.-W. Pa. Railway Co.]

suance of this purpose it has already graded and ballasted, ready for the cross-ties, the portion of its road between the present terminus and the proposed crossing, and has also graded its roadway through said land of defendant company to said river.

" It has also permanently located and partially graded its roadway from said river, southward, for several miles towards Uniontown.

" The location of the plaintiff company's road at, and for some distance on each side of the proposed crossing, was judiciously made with reference to the interests of said plaintiff company, and the convenience of trade and travel on its road at that point, and will involve much less expense in construction and do much less damage to private property than any other route that could have been selected.     The plaintiff company might have selected a route by which it could cross the road of the defendant company *above* grade, but such route is not reasonably practicable, on account of the greatly enhanced cost of construction—amounting to at least $25,000 or $30,000—the greater damage to private property, the necessity of constructing the bridge across the Youghiogheny river at the point of crossing, with a heavy descending grade southward, the greater expense and difficulty of making a connection with the defendant company's road, and affording convenient accommodations for the public trade and travel on its road at that point.

" The proposed crossing of the plaintiff company at grade, will not be as safe as an over grade crossing, but under proper regulations the crossing and connection with defendant company's road can be effected with reasonable safety and convenience to the trade and travel of both companies, and by permitting the plaintiff company to cross at grade and connect with defendant company's road on the location selected and adopted, a large and unnecessary outlay and expense to the company plaintiff will be avoided and public convenience promoted.

" The Pittsburg and Connellsville Railroad Company was incorporated by an Act of Assembly, approved the 2d day of April 1837. In pursuance of the authority conferred by this act, and the several supplements thereto, the company located and constructed its present line of railroad, and has been operating the same for many years before the plaintiff company was incorporated.

" The freight and passenger depot, turn-table, switches, sidings and engine-house, of the company defendant, are located at the lower or north end of the borough of Connellsville, a short distance south-east of the point where the plaintiff company has located its crossing.

" On the first day of June 1871, the defendant company entered into an agreement with the Connellsville Mutual Building and Loan Association, whereby it acquired the right to occupy and use

for the purposes and upon the terms and conditions in said agreement mentioned, a piece of land containing about seven acres, lying immediately below its depot in Connellsville, and extending northwardly between its track and the Youghiogheny river to Mount's Creek.  This agreement was acknowledged by the president of The Connellsville Mutual Building and Loan Association, on the 31st day of October 1871, and by the president of the defendant company on the 10th day of November following, and recorded on the 13th day of the same month.

" In pursuance of this agreement the defendant company took possession of the lot of ground therein described, and proceeded to improve and use a part thereof as contemplated by the terms of the contract.

" The line of the plaintiff company's road as located crosses said lot in such a way as to cut about two acres off the upper or southeasterly end thereof, as shown on the accompanying plot.  This end or portion of the lot south of the proposed crossing is mostly high ground, elevated considerably above the grade of the railroad.  It has not been used by the defendant company, and cannot be until it is graded.

" The other or northerly portion of said lot contains all the improvements made by the company defendant, and has been approached and entered by a switch and bridge across Mount's Creek.  This approach and the use of the larger or northerly end of said lot as the same has hitherto been used, will not be materially interfered with by the proposed crossing of the plaintiff company.

" The location of the plaintiff company's road across said lot partly embraces ground intended by the company defendant, as a location for a round-house, which said company has contemplated erecting thereon, as shown by the plot presented by defendant company.

" If the southerly end of the said lot was graded down to the level of the railroad track, with the view of using the same in connection with the northerly portion of the lot, the proposed crossing of the plaintiff company would materially interfere with such use.

" The defendant company has acquired about 22 acres of land on the line of its road on the southerly side of Connellsville (not more than half a mile distant from the lot above referred to), for the purpose of erecting thereon machine-shops, round-house, foundry, &c., &c., for the construction and repairing of engines, &c.  This land, in connection with the portion of the first-mentioned lot north of the proposed crossing, will be amply sufficient and convenient for all the necessary uses and operations of the company defendant; and the crossing of the first-mentioned lot by the plaintiff company's road, as proposed, will not seriously embarrass

or interfere with the company defendant in the convenient and successful operation of its railroad.

" The plaintiff company has been unable to come to any understanding or agreement with the defendant company in relation to the proposed crossing of its railroad and ground, and the defendant company has expressed a determination to resist and prevent such crossing.

" The plaintiff company tendered and presented for approval a bond to the defendant company and to the Connellsville Mutual Building and Loan Association, conditioned for the payment of such damages as may be duly ascertained, and awarded to them, which was approved by the court on the 11th day of April 1872, and filed at No. 36 of June Term 1872.

" The question which arises upon the foregoing facts is, whether the plaintiff company has the right and should be permitted to cross at grade the road and lands of the company defendant, on the location selected and adopted.

" Under our extended system of railway communication, it is absolutely necessary for railroads to cross other public highways, and sometimes to appropriate them in part at least; and it will not be contended that railroads themselves can claim exemption from being crossed by other railroads, provided they are not deprived by such crossing, of property necessary to the proper conduct of their own business.

" It must be admitted that the crossing of one railroad by another will cause some inconvenience and more or less injury, and is susceptible of compensation in damages, and if the property taken or occupied by such crossing is not essential to the proper conduct of the business of the road, there can be no good reason for prohibiting the crossing.

In the case of roads running in different directions and sometimes in the same general direction, crossings become a reasonable and sometimes an absolute necessity. The Act of June 19th 1871, recognising this necessity, provides that it shall be the duty of courts of equity to ascertain and define by their decree the mode of such crossing which will inflict the least practicable injury upon the rights of the company owning the road to be crossed, and if in the judgment of the court it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade.

" Again, the first section of article 17, of our present Constitution, goes further, and provides that ' Every railroad company shall have the right, with its road to *intersect, connect* with or cross any other railroad, and shall receive and transport each the other's passengers, tonnage and cars, loaded or empty, without delay or discrimination."

" It is not to be expected that such intersection, crossing or con-

nection can be effected without at times doing some injury to the company whose road is intersected or crossed, but if it be an injury that does not deprive the company of the means of freely exercising its corporate rights and franchises, or seriously embarrass or interfere with its operations, and is susceptible of compensation in damages, there is no reason why a railroad should claim immunity from such injury, any more than other corporations or individuals.

" The public good, for the promotion of which all corporate powers are conferred, rises higher than private interests or the interests of other corporations.

" It has been found that it is not reasonably practicable for the plaintiff company to cross the road of the defendant company *above* grade; and so far as the matter of crossing at grade is concerned, we have no difficulty in reaching the conclusion that the crossing under, under proper regulations, should be permitted. As to the location on and occupancy of defendant company's land, between its roadway and the river, we have had some difficulty, but in view of the fact that the appropriation and use of the land in question by the plaintiff company will not deprive the company defendant of adequate facilities for the proper conduct of its business, and any injury it will sustain can be easily compensated in damages, we have been led to the conclusion that, under all the facts of the case, the plaintiff company should be permitted to proceed with the construction and operation of its road on the location selected and adopted by it. .

" As we have already seen, the plaintiff company tendered a bond for the payment of damages, which was presented to and approved by the court. If this bond is deemed insufficient the defendant company can apply for such additional security as may be deemed necessary." * * *

The decree was :—

" That the plaintiff company has the right and should be permitted to construct and operate its railroad across the roadway and tracks of the defendant company, at grade, and across the adjoining land of the company defendant, on the location adopted by the plaintiff company, and also to connect with the defendant company's road at or near said crossing. Subject, however, to the payment (when duly ascertained) of such damages as the defendant company may appear to sustain by reason of the crossing of its roadway and the taking of its land aforesaid. Subject, also, to the provisions hereinafter made .for construction, maintenance and government of said crossing.

" And it is ordered and decreed, that the crossing of the roadway and tracks of the defendant company shall be constructed by the plaintiff company, at its own proper cost, under the direction of a competent engineer of the company defendant, in such manner as

will do the least practicable damage to the defendant company, and cause the least possible interruption in the running of its trains, and that the said crossing shall be kept and maintained in perpetual good order and repair by the company plaintiff at its own proper cost.

" And it is further ordered and decreed, that the company plaintiff shall at all times, at its own proper cost, keep and maintain a watchman at said crossing, to signal and warn approaching trains or engines, and keep said crossing clear of obstructions.

" And it is further ordered and decreed, that the said crossing shall be governed by the following regulations, to wit :—

" All trains or engines passing over either of said roads, shall come to a full stop, not nearer than two hundred feet, nor farther than eight hundred feet, from said crossing, and shall not cross until signaled so to do by the watchman, nor until the way is clear.

" When two passenger or freight trains come up at the same time, the train on the road of the company defendant shall have the precedence in crossing, provided said trains are both on main tracks, over which all passengers and freights are transported ; but if only one is such main-track and the other is a side or depot track, then the train on the main track shall have the precedence, and engines with cars attached shall take precedence over engines without cars.

" The right is reserved to either of the parties, upon notice to the other, to apply to the court for such addition to or modification of these regulations as the safety of persons and property may seem to require.

" And it is further ordered and decreed, that the defendant company, its officers, agents and servants, shall be enjoined from preventing or interfering, with the plaintiff company, its officers or employees, in the construction of its railway at grade, across the roadway and adjacent land of the defendant company, otherwise than hereinbefore provided.

" And it is further ordered and decreed, that one-half of the costs in this case be paid by each of the parties, plaintiff and defendant."

The defendants appealed to the Supreme Court, and in several specifications assigned the decree for error.

*G. Shiras, Jr.,* and *D. Kaine,* for appellants, referred to Act of 19th June 1871, Pamph. L., 1 Br. Purd. 288, pl. 39, 40.

*N. Ewing* and *A. M. Fulton* (with whom was *C. E. Boyle*), for appellees.—The power of the directors to locate their road by whatever route they saw proper is absolute, and beyond judicial control, unless, perhaps, they should capriciously and wantonly disregard the

rights of others : Anspach *et al. v.* Mahony & Broad Mountain
Railroad Co., 5 Phila. Rep. 491 ; N. Y. & E. Railroad Co. *v.*
Young, 9 Casey 182 ; Cleveland & Pitts. Railroad Co. *v.* Speer, 6
P. F. Smith 333.

A corporation by its delegated right of eminent domain, may
take the property of another corporation upon making compen-
sation : 1 Redfield on Railways, §§ 1–4, 10 ; Vermont *v.* Boston,
C. & M. Railroad, 25 Vt. 433 ; Philada. & Reading Railroad Co. *v.*
The City of Philadelphia, 11 Wright 329; Com'th *v.* Penna. Coal
Co., 16 P. F. Smith 47 ; Const. of Penna., art. 1, sect. 10 ; art.
16, sect. 3. Railroads have the right to cross other roads at grade :
Act of April 4th, 1868, sect. 10, 2 Br. Purd. Dig., p. 1213, pl.
10 ; Act of June 19th 1871, *supra.*

Mr. Justice Mercur delivered the opinion of the court, Janu-
ary 4th 1875.

This is an appeal from a decree, in which, inter alia, it was ad-
judged that the appellee has the right, and shall be permitted to
construct and operate its railroad across the roadway and tracks
of the appellant, at grade, and across the adjoining lands of the
appellant, on the location adopted by the appellee, and also to con-
nect with the appellant's road at or near said crossing ; and that
the appellant shall not interfere therewith.

The appellee was incorporated by the Act of 16th of March
1871 ; the appellant by the Act of 3d of April 1837. The line of
the railroad of the latter had been located, constructed, and in
operation many years before the appellee was incorporated.
Where the road of the appellee as located crosses the appellant's
lands, it passes over the very ground on which the latter designs to
build a round-house.

The question is, shall the appellee be permitted to cross at grade
the road and lands of the appellant on the location designated and
adopted by the appellee ?

It is claimed that this authority is given by the act of its incor-
poration. The third section of that act authorizes the company to
construct a railroad " by such route as the directors may select,"
between the termini of the road, and " to connect with any other
railroad already built or hereafter constructed." After several
other specific provisions, the 5th section declares " in all other
respects the company shall be regulated by the Act of 19th of
February, A. D. 1849, and the several supplements thereto, and
shall be entitled to all the advantages thereof, and of all other gen-
eral laws of the Commonwealth, relative to railroad companies,
with like privileges as if organized thereunder." Neither the Act
of 19th February 1849, nor any of its supplements, gives any spe-
cific authority to cross at grade. The appellee, however, invokes
the aid of the 10th section of the Act of April 4th 1868, P. L. 62,

which declares "companies formed under the provision of this act shall have the right to construct roads so as to cross at grade the track or tracks of any other railroad in this Commonwealth." This act does not profess to be a supplement to any other act, but is entitled "An act to authorize the formation and regulation of railroad corporations." It is a general law under which all such proposed corporations may be organized. It therefore follows, under the 5th section of the act of its incorporation, the appellee possesses the same rights and privileges in regard to crossing the track of another railroad, as if organized under the Act of April 4th 1868.

The 1st section of the Act of June 19th 1871, Purd. Dig. 288, pl. 39, gives authority to courts of equity to inquire into any alleged injurious act done by a corporation, under a claim of right to the private rights of individuals, or to the rights or franchises of other corporations; and if such acts are found to have been committed without right, to restrain them. The second section of the same act declares "when such legal proceedings relate to crossings of lines of railroads by other railroads, it shall be the duty of courts of equity of this Commonwealth to ascertain and define by their decree the mode of such crossing, which will inflict the least practical injury upon the rights of the company owning the road which is intended to be crossed, and if, in the judgment of such court, it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade.

The appellee contends that inasmuch as it was incorporated prior to the passage of this act of 19th of June, it is not affected by those restrictive provisions, which would impair its vested rights; but if it had at any time been so restrained, the restrictions are removed by the 1st section of article 17 of the Constitution of 1874, which declares, "every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad."

The argument that the rights of the appellee are not affected by the Act of 9th of June 1871, by reason of its previous incorporation under the Act of 4th April 1868, does not strengthen its position in this case, even if it was correct in itself alone. The appellant may invoke the application of the same principle, and thereby remove out of its way the foundation on which the argument rests. That foundation is the Act of 1868. The appellant was incorporated more than thirty years before its passage, and twenty years before the adoption of the Amendment to the Constitution in 1857, authorizing the legislature "to alter, revoke or annul any charter of incorporation" thereafter conferred. The Act of 1868 did not profess to apply its provisions to any corporation existing prior to its passage. The constitution amendment of 1857 was expressly limited in its application to corporations

"thereafter" created. The appellee was incorporated subject to this amendment. The appellant was not. With much stronger reason then, it may be claimed that the appellant is in no wise affected by the Act of 1868.

We think, however, the appellee was subjected to the operation of the Act of 19th of June 1871. Under the Act of 1868, the place where, and the manner in which, one railroad might cross another railroad at grade, were undoubtedly subjected to review by a court of equity. The fact that it might cross at grade gave it no perverse and arbitrary right to do so, regardless of the rights of the corporation injured thereby, and of the safety of the public. Every legislative grant is made with the implied reservation that it shall not injure others: Commonwealth *v.* Pennsylvania Coal Co., 16 P. F. Smith 42. Railroads are public highways. They cannot, therefore, for all purposes, be considered private property only. As they possess a public character, they are subject to a public supervision.

Besides, we cannot presume the legislature ever intended to divest itself of the exercise of the police power of the state. The right to regulate railroad crossings naturally flows from that reserved power. It is by the exercise of the same power that the speed of trains is limited in populous districts. Nor is the position of the appellee strengthened by that portion of the Constitution of 1874 to which we have referred. It does not profess to declare whether the crossing shall be at grade or otherwise. It wisely leaves that to legislative action and judicial supervision to determine.

Then returning to Act of 19th of June 1871, we see it does not put the rights of the company desiring to cross the railroad of another, on a level with the rights of that other company, but manifestly declares them to be secondary. Two thoughts are clearly expressed in this statute. The one, that no unnecessary injury shall be perpetrated on the road sought to be crossed; the other that crossings at grade shall be prevented whenever they can reasonably be avoided. The appellee then starts with both these obstacles placed in its way by legislative authority. They must be removed by evidence. The parties do not stand on an equality. The rights of the first occupant of the ground, in pursuance of law, are recognised as superior to those of the new claimant. In failing to give due weight to this superior right in the appellant, we think the learned judge erred, and thereby reached a conclusion not warranted by the statute.

Moreover, the evident intendment of the statute is to discourage crossing at grade. This is a question in which the company whose road is to be crossed, is not the only party liable to injury thereby. It involves the safety and security of the public. Crossings at grade are always attended with danger. As our population

[Pittsburg & C. Railroad Co. v. S.-W. Pa. Railway Co.]

becomes more dense, travel and traffic will increase, and the injuries resulting from grade crossings will be multiplied. Each succeeding year will increase the necessity for avoiding them. Their construction should now and henceforth be discouraged.

An examination of the testimony and of the facts found by the judge, who also acted as master, satisfies us that the location fixed by the appellee, for crossing the road of the appellant, will work great injury to the latter; it will seriously interfere with the convenient use and occupation of their shops already erected, and will prevent the erection of other buildings which they propose to erect, and which are necessary for the proper exercise of its franchises; that it is reasonably practicable for the appellee to adopt another suitable location for crossing the road of the appellant on a shorter line; that the additional expense of constructing a road on such other location is insufficient to destroy its practicability; besides, to a considerable extent, it will be compensated by reducing the damages to the appellant; the grade will be somewhat heavier, but not so great as seriously to impair the value of the road. We are, therefore, led to the conclusion, 1st. That the mode of crossing designated by the appellee is not the one which will inflict the least practical injury on the rights of the appellant; and 2d. That it is reasonably practicable to avoid a grade crossing.

The decree must therefore be reversed.

And now, to wit, January 4th 1875, this cause having come up by appeal from the decree of the Court of Common Pleas of Fayette county, and having been argued by counsel at Pittsburg, after due consideration thereof, it is ordered, adjudged and decreed, that the said decree of the Common Pleas be reversed and set aside, and that the bill be dismissed, and that the appellee pay the costs below and of this appeal.