Pennsylvania Railroad Company, Lessee of the Phila-- delphia & Erie Railroad, Appellant, *v.* The Warren Street Railway Company.

*Railroads—Electric railways—Grade crossing—Equity act of June 19,. 1871—Damages for overhead trestle.*

Under the Act of June 19, 1871, P. L. 1360, the one test imposed by the statute is the reasonable practicability of the overhead crossing, and courts will prevent grade crossings wherever it is reasonably practicable to avoid them, notwithstanding it would be unsightly in appearance, and irrespec-- tive of the fact that, under a decree granting a grade crossing, extraordi- nary precautions were to be taken against collisions.

In determining whether there shall be a grade crossing or an overhead, crossing the court will not take into consideration a possibility that the construction of an overhead trestle would subject the company building it to liability for damages to adjacent property, in advance of any ascertain- ment of the damages, as they are too remote and speculative to make such- crossing not "reasonably practicable."

The court will not authorize a grade crossing of a railroad by an electric railway where it appears that there is no physical obstacle to the construc- tion of an overhead crossing; that such a crossing would extend only 700 feet along the street, and would leave a space of twenty-four feet clear· for street travel, and would cost only $4,000.

*Appeals—Supreme Court—Superior Court—Equity*

An appeal lies from a decree of the court of common pleas sitting in equity to the Supreme Court, instead of the Superior Court, where the· lower court, in the exercise of the jurisdiction conferred upon it by the· act of June 19, 1871, authorizes the construction of a grade crossing.

Argued May 3, 1898. Appeal, No. 353, Jan. T., 1897, by plaintiff, from decree of C. P. Warren Co., June T., 1897,. No. 71, on bill in equity. Before STERRETT, C. J., GREEN,. McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Bill in equity for an injunction.

NOYES, P. J., found the facts to be as follows:

### FINDINGS OF FACT.

The plaintiff is the lessee of the Philadelphia & Erie Rail- road, and as such lessee operates the same. The Philadelphia & Erie Railroad crosses Water street, in the borough of War-

ren, with two tracks, one used for eastbound and one for westbound trains. The general direction of the railroad is east and west, and in much of the testimony the points of compass are determined by assuming such to be the course of the railroad at the point of crossing, but its actual course at that point is nearly south. We shall, in these findings, use the actual points.

The defendant company is duly incorporated as an electric street passenger railway company, and has duly obtained the consent of the municipal authorities of Warren borough to lay its tracks and operate its road along Water street in said borough over the tracks of the plaintiff company to the western limit of the borough. It intends, unless restrained, to construct its road and run its cars over and across the plaintiff's tracks at Water street at grade.

Water street is the principal business street in the borough. From the plaintiff's railroad eastward it is paved with brick. It constitutes the main thoroughfare between the Philadelphia. & Erie and W. N. Y. & P. railway stations and the business part of Warren, and is the street chiefly used in going to and from trains, and by travel to the towns of Irvine, Youngsville, Pittsfield, and the country west of Warren.

East of the railroad the Allegheny river bounds Water street on the south, and after crossing that street the railroad immediately passes over a large double track steel bridge spanning the river. East of the crossing, Water street, from its north line to a point where the bank of the river becomes steep, is fifty feet in width, and west, at Struthers' Iron Works, it is the same. The width of the roadway is about twenty-eight feet, and from the north curb to the river bank is thirty-nine feet. The railroad approaches the bridge at Water street from the west and north by a sharp curve. Some 200 feet northward from Water street is its passenger station, and at this point the curvature is six degrees seventeen minutes. There is a grade amounting to from three to five one hundredths of a foot for 200 feet north of Water street.

The railroad company maintains safety gates at its crossing of Water street, in charge of a watchman, by whom they are lowered on the approach of trains to warn the public and prevent vehicles, animals and persons from going upon the tracks when a train is about to pass.

From forty to fifty trains pass over the railroad during the twenty-four hours. All regular passenger trains come to a full stop at the company's station, some 200 feet north of Water street; local and light freight trains also stop at the company's telegraph office, a short distance further northward. All trains going east which make either of these stops come to a full stop before passing over the crossing, and have it in full view when they start again. Trains approaching from the east intending to stop are slowed down and brought under full control before passing over the crossing.

Heavy through freight trains, by reason of the heavy curve, do not usually stop at either telegraph office or station, but accumulate momentum on the straight track in order to carry them around the curve, which acts as a brake and greatly retards the speed as the train passes around it. Trains approaching from the east could be stopped in time to prevent collision should there be an obstruction at the crossing. Whether a train approaching from the west could be stopped before reaching the crossing, after an obstruction became known to the engineer, would depend upon the number of the cars equipped with air brakes. Some trains, as now commonly run, could not be stopped.

An observer standing upon the plaintiff's westbound track, at the crossing, can see a train approaching from the west a distance of about 700 feet, and from the east about 2,175 feet. Standing upon the eastbound track, which is the inner track of the curve, his vision would be more restricted.

An ordinance of the borough of Warren prohibits the running of trains faster than six miles an hour within the borough limits, but the heavy trains referred to before passing upon the curve necessarily run somewhat faster.

The only means of avoiding a grade crossing shown by the evidence is an overhead crossing constructed in Water street. The plans for such a crossing submitted by the plaintiff consist of a solid approach about fifty feet long at each end, and rising from the grade of the street to six feet in height, where the trestle begins. From the end of the eastern approach a trestle would be constructed with a grade of about eight per cent, carrying the track to an elevation of twenty feet above the railroad, which would be crossed by a steel bridge, and

then descending at a grade of six and a quarter per cent until the track of the Struthers' Iron Works crossing Water street is crossed at an elevation of fourteen feet, where the grade becomes eight per cent again to the western approach. This structure would be located on the southern side of Water street, east of the crossing and for some distance west, occupying sixteen feet of the thirty-nine feet available for public travel, and the construction is such that the public could not travel beneath it.

A curve is made on the east trestle from the center of the street to the south; and on the west side from the crossing northward to regain the center of the street. This would leave twenty-three feet of street for public travel on foot and in vehicles east of the crossing, and seventeen feet on each side of the trestle on the west. It would not be practicable for wagons to pass under the trestle, the braces appearing to obstruct all passage. But if this were changed and avoided, the sidewalk would necessarily occupy six or eight feet of the space, and the bents being sixteen feet apart it would still be impracticable. The roadway on the south side of Water street, west of the crossing, would therefore be impracticable for general use. . . .

The crossing shown in the plan could be constructed of wood for about $4,000. Its life would be about ten years.

The crossing of the plaintiff's tracks at grade involves no damage or injury to the plaintiff apart from the danger of collision. The danger from collision would be obviated by the overhead crossing, but it would involve considerable danger to passengers traveling by electric cars, and the failure of the current while a car was on a grade concurring with a failure of the brake or such a condition of the track as prevented the brake from holding the car would, by reason of the proximity to the river, make a serious accident almost inevitable.

The erection of such a structure as here proposed in the principal street of such a town as Warren would be a very serious inconvenience and danger to the public, to say nothing of its monstrous unsightliness. It would occupy 700 feet in length and sixteen feet in width of the principal street in a beautiful town, leaving the public for part of the way but twenty-three feet for all vehicles, manifestly an insufficient width. There is no evidence on the subject, but from our per-

sonal knowledge of the location, it seems to us that it would be quite impracticable to construct a subway crossing by reason of the floods in the river, and there is no way of crossing on private ground.

The legal principles to be applied in this case are well settled and undisputed. The defendant has the right to cross the tracks of the plaintiff, but the crossing must be constructed under the supervision of the court under the provisions of the act of June 19, 1871, and that act makes it the duty of the court to prevent a crossing at grade if reasonably practicable to avoid it. . . .

Applying the tests suggested by our superiors we are of opinion that in the case before us an overhead crossing cannot be constructed except at such a sacrifice of the conveniences and safety of the public as more than counterbalance any inconveniences or danger involved in the crossing at grade.

Under the evidence we are inclined to permit the crossing known as a "jump" crossing. This crossing is a little harder on the electric cars, but it does not require any cutting of the rails of the steam road. Street cars will not be permitted to pass over the railroad when a train is approaching, and as rarely more than a single car passes at a time, it would seem an easy matter to push it across by hand in the rather improbable event of a failure of the current just at that point. The jarring off of the trolley would be but a momentary interruption.

In framing the final decree these matters, as well as all other matters of detail as to the operation of the crossing, may be considered.

Let a decree be drawn by the defendant's counsel and submitted, with notice to counsel for plaintiff, embracing the following provisions :

1. Permitting the defendant, upon giving bond with surety approved by the court, in the sum of $1,000, conditioned that it will in all respects comply with this decree, to cross the plaintiff's road at grade.

2. Defining the kind of crossing to be used and the manner of putting in the same.

3. Requiring the defendant to keep the same at all times in repair and permitting plaintiff in case of default to make repairs at defendant's expense.

4. Prohibiting the defendant's crossing the tracks until the conductor shall have looked for approaching trains from the most favorable point within ten feet of the tracks.

5. Requiring the payment of costs of this proceeding by defendant.

*Error assigned* was decree of the court.

The appellees moved to dismiss the appeal for the reason that the Supreme Court is without jurisdiction; this being within the class of cases in which an appeal lies to the Superior Court.

*J. Ross Thompson,* of *J. Ross Thompson & Son,* for appellant. —The act of 1871, relative to grade crossing, applies whether a steam railroad is crossed by another steam road, or a steam road is crossed by an electric railway. It is a police regulation looking to the safety of the public and applies with equal force as to either: Traction Co. v. Canal Co., 180 Pa. 636; Extension Co. v. R. R., 150 Pa. 193; Penna. R. R. v. Braddock Electric Ry., 152 Pa. 116.

*W. E. Rice,* with him *W. D. Hinckley,* for appellee.—The appeal should have been taken to the Superior Court: Traction Co. v. Canal Co., 180 Pa. 636.

OPINION BY MR. JUSTICE GREEN, October 17, 1898:

In all our recent utterances respecting grade crossings of railroads, we have expressed ourselves with an increasing emphasis against their allowance, and with a most earnest purpose to "prevent" them wherever it is "reasonably practicable to avoid" them. We consider this to be our plain duty in order to conform with the express letter of the act of 1871, and to effectuate the prudential considerations and the manifest policy which underlie the legislation upon this very important subject. A recurrence to a few of our later decisions will be desirable in this connection to illustrate their application to the facts of the present case. In Perry Co. R. R. v. R. R., 150 Pa. 193, the Chief Justice delivering the opinion said: "We must consider the legislation bearing upon this subject as a whole, and the acts of 1849 and 1868, before referred to, as modified by

the act of 1871. The latter act does not put the rights of the company desiring to cross the railroad of another on a level with the rights of that company, but manifestly declares them to be secondary. Two thoughts are clearly expressed in this statute, the one that no unnecessary injury shall be perpetrated on the road sought to be crossed; the other, that crossings at grade shall be prevented whenever they can reasonably be avoided: Pittsburg & Connellsville Railroad Co. v. The South Western Railway Co., 77 Pa. 173. In that case we held that the act of 1868 did not give a railroad corporation an arbitrary right to cross another railroad, regardless of the rights of the corporation injured and the safety of the public; and that the intent of the act of 1871 is to discourage grade crossings involving danger to the public as well as injury to the company whose road is crossed. A decree was entered prohibiting a crossing at grade. Just here we will supplement the decision of that case by saying that the time for grade crossings in this state has passed. They ought not to be permitted except in case of imperious necessity. They admittedly involve great danger to life and property."

In Penn. R. R. Co. v. Electric Railway Co., 152 Pa. 116, the present Chief Justice, referring to the act of 1871, and discussing its effect upon the act of 1889 which conferred the right to cross at grade, said: "The manifest purpose of this (act of 1871, sec. 2) is not merely to *discourage* grade crossings because of their danger to the public as well as injury to the company whose road is crossed, but also to *prevent* them whenever in the judgment of the court it is reasonably practicable to avoid such dangerous and injurious crossing. As an exercise of the police power of the state, the wisdom of the provision has become more manifest from year to year as railroads multiply." After quoting from the opinion in the Perry County R. R. case above cited, Mr. Justice STERRETT further said: "It is claimed by defendant however that the eighteenth section of the act of 1889, under which it is incorporated, expressly authorizes it 'to cross at grade, diagonally or transversely, any railroad operated by steam or otherwise, now or hereafter built.' If by the language thus employed the legislature intended not only to barter away the police power of the state in regard to such grade crossings, but also to limit the jurisdiction of courts

of equity in relation thereto, then indeed, the learned judge fitly characterized such legislation as 'exceedingly vicious,' but we cannot think any such construction as that should be given to sec. 18 of the act (art. 16, sec. 3, const. ). It is a well recognized principle of legislation that grants of franchises are made and accepted in subordination to the police power of the state. This results from the inherent nature of that power. . . . . We are therefore warranted in concluding that a surrender of that power was neither effected nor intended to be made by the act under consideration. Nor do we think that the jurisdiction conferred by the second section of the act of 1871 was in any manner restricted or limited by the act of 1889. As we have seen, the latter is entitled 'An act to provide for the incorporation and government of street railway companies in this commonwealth.' This title conveys not the slightest intimation of any intention to interfere with the jurisdiction theretofore conferred on courts of equity relating to railroad crossings at grade.

"The tenth section of the general railroad act of April 4, 1868, provides that 'railroad companies formed under the provisions of this act shall have the right to construct roads so as to cross at grade the track or tracks of any other railroad in this commonwealth.' In Pittsburg, etc., R. R. Co. v. Railway, 77 Pa. 173, it was held that the exercise of this right was subject to judicial control. It was there said, 'The appellee was subjected to the operation of the act of June 19, 1871. Under the act of 1868, the place where and the manner in which one railroad might cross another at grade were undoubtedly subjected to review by a court of equity. . . . Moreover the evident intendment of the statute is to discourage crossings at grade. . . . Each succeeding year will increase the necessity for avoiding them. Their construction should now and henceforth be discouraged.'

"We have no doubt electric railways are within the purview of the act of 1871. They are certainly within the mischief for which the second section provides a remedy."

In both the foregoing cases, as well as in the cited case from 77 Pa. 173, the grade crossings had been allowed by the court below, and in all we reversed the judgments and refused the crossing. In the still more recent case of Scranton & Pittston Traction Co. v. Del. & Hud. Canal Co., 180 Pa. 636, the views

expressed in the preceding cases were emphatically reaffirmed and applied. The court below had allowed the crossing, and this judgment was affirmed by a majority of the Superior Court; but we reversed the judgment and refused the crossing, although the facts as to the physical situation and the difficulty of avoiding a grade crossing were far more serious than they are in the case at bar. Our Brother DEAN in an exhaustive opinion, both on the law and on the facts appearing in that case, held that the crossing should be refused, notwithstanding the very serious obstacles arising out of the physical situation. After stating the facts he says: "This brings us at once to a consideration of the duty of courts under the second section of the act of 1871: 'If in the judgment of such court it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade.' So far as the possible may be considered the practicable, there are very few points on the surface of the state where other than grade crossings are not practicable. What a century ago were deemed insurmountable obstacles to an under or over crossing are now treated as only engineering difficulties which skill and capital can generally overcome. But the legislature has modified what may be deemed a strict definition of the word 'practicable' by prefixing the word 'reasonably.' This devolves upon the courts in every contention of this kind an ascertainment from the facts of the particular case what is 'reasonable.' In the first place we must assume, because the legislature in this enlightened age has impliedly so assumed, that it is unwise, if not reckless and barbarous, to unnecessarily subject the traveling public and the employees of carrying corporations, to the death, maiming and horrors of collisions which inevitably result from grade crossings. And if it is reasonably practicable to avoid a grade crossing, then the question as to what extent the risk of such a crossing may be reduced is immaterial, for the law assumes, and experience demonstrates, that extraordinary care by both parties using such crossing, aided by all the advances in science and mechanics, has only resulted in lessening the risk, not in abolishing it. In deciding, therefore, what is reasonable we are bound to keep in mind the consequences to be avoided. It is not as if the result of a collision were the injury to, or even the destruction of, property which, compared with rapid and

cheap travel and transit, might perhaps be trivial, but it is the danger to the persons of the public which is to be avoided. Safety is the object in view, and, therefore, in determining what is reasonable we must balance expense and difficulty against loss of life and limb." Referring to the facts as to the crossing in that case the opinion proceeds: " There is no physical obstacle to the avoidance of a grade crossing. As to the cost of avoiding it where it is physically practicable, it is not clear from the act itself that the legislature intended this fact should be considered in determining what is reasonable. . . . But assuming the question of cost may properly enter into the question of reasonableness, it can have no weight here, for it is conceded that the additional expense of an overhead crossing would not be over six to eight thousand dollars, a sum not equal to the cost of one mile of additional track; an amount which balanced against the loss of a single limb to a passenger is of no weight at all." The opinion then deals with the proposition that as the traction company could not build an overhead crossing without elevating it in front of the buildings of adjoining owners, and as it did not have the right of eminent domain it could not erect the crossing without the consent of the owners, and therefore it was practically impossible to build it at all. To this contention the opinion replies: " The traction company in effect says, we have no power under our charter to construct a reasonably practicable overhead crossing as required by law, therefore, as to us, a crossing, except at grade, is impracticable. But the reasonably practicable is not to be determined by want of corporate power to invade the rights of the property owner. The construction of the crossing is what the statute expressly says shall be regulated by the courts, and this with a view to avoid danger, and to protect the older franchise from injury by the younger one. The act of 1889 gives the right to cross at grade, but then we are met by the act of 1871 which says the court shall by its process prevent it, if an overhead crossing be reasonably practicable. This leaves only for the court the physical problem to be solved by the inference warranted from the character of the two roads, the business done upon them, the topography of the territory, and like facts. . . . We may say here that if the act of 1889 does not confer upon electric railway companies those full powers neces-

sary to their construction and corporate prosperity, the legislature is the body to which application should be made for more extensive grants. And we may further say that, after ample time for the most thorough consideration, we are determined to unflinchingly adhere to the rule announced in Perry County Railroad v. Newport, etc., Railroad, 150 Pa. 193, Penna. R. Co. v. Braddock Electric Ry. Co., 152 Pa. 116, and subsequent cases."

The writer has made the foregoing liberal citations from the cases named because they practically determine every contention made in the present case. We have here no physical obstacle to the construction of the overhead crossing. It is entirely practicable. The learned court below considered that it would be an obstruction to the travel in the street, and therefore a serious inconvenience, and also that it would be very unsightly in appearance. As the street is forty feet wide, and the trestle work but sixteen, there would be twenty-four feet left in the clear for the street travel, and as the whole distance to be occupied by the structure would be only 700 feet in length along the street, we do not think this would be so serious an inconvenience to the street travel as to destroy the reasonable practicability of the overhead crossing. As to the unsightliness of the structure it cannot be considered as of any consequence when weighed against all the dangers of a grade crossing. As the cost would be only $4,000 it goes for nothing as against the statutory prohibition. As to the damages which might have to be paid to private owners, they are of too uncertain character and amount to constitute, in advance of any ascertainment, a reason for granting the grade, as against the overhead, crossing. Moreover we declined in the last cited case to give any weight to that contention. The consideration of the probabilities or the improbabilities of collisions, by reason of extraordinay precautions to be prescribed in the decree, is not an element in the determination of the question. The one test imposed by the statute is the reasonable practicability of the overhead crossing. If that is established other considerations become unimportant. We desire to announce again that we firmly adhere to the policy, and to the rules and principles expressed in the decisions to which we have referred.

The motion to dismiss the appeal is without merit and is denied. The assignments of error are all sustained.

The decree of the court below is reversed at the cost of the appellee and it is now ordered that the Warren Street Railway Company be perpetually enjoined against crossing the tracks of the Pennsylvania Railroad Company at grade.