# Perry Co. R. R. Extension Co. *v.* Newport & Sherman's Valley R. R. Co., Appellant.

[Marked to be reported.]

*Railroads—Crossing, one by another, at grade—Act*, 1849.

The general railroad Act of Feb. 19, 1849, P. L. 83, giving a general authority to lay out and construct a railroad between designated termini, confers the right to cross the tracks of another company, by necessary implication, when absolutely necessary to carry out the grant of the franchise.

150  193
152  126

150  193
160  284
160  643

150  193
180  643

150  193
188   79
188   84
188  111

150  193
190  627

150  193
192   52
192   95
d192 560

150  193
193  139

150  193
198    7

150  193
200  529

*Necessity for crossing, character of—Act,* 1871.

The Act of June 19, 1871, P. L. 1360, providing that the court shall " ascertain and define the mode of crossing which will inflict the least practical injury upon the rights of the road which is intended to be crossed, and if in the judgment of the court it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade," construed in accordance with our present surroundings, should be held to prevent all grade crossings except in case of imperious necessity. And the necessity must not be of its own creation, as by locating the line in one place when another route is practicable.

The fact that the capital of a railroad is limited is not sufficient reason to justify a grade crossing; nor that the road is a local road through a sparsely settled country, with a limited amount of business and but few trains.

*Modification of Act of* 1868 *by Act of* 1871.

The Act of April 4, 1868, giving railroad companies the right to cross at grade the tracks of any other railroad, is modified by the Act of 1871, the purpose of the latter Act being the protection of the rights of the public and prior corporations.

*Constitution—Art.* xvii, *sec.* 1.

Article xvii, § 1, of the constitution, providing that every railroad company shall have the right, with its road, to intersect, connect with or cross any other railroad, does not refer to or authorize grade crossings ; and a decree preventing a grade crossing does not conflict with this pro-vision of the constitution.

Argued May 24, 1892. Appeal, No. 52, July T., 1892, by defendant from decree of C. P. Perry Co., Jan. T., 1892, No. 22, in equity, authorizing plaintiff company to cross the tracks of defendant company at grade. Before PAXSON, C. J., STER-RETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

The facts as found by the master, Alexander F. Thompson, sufficiently appear in the opinion of the Supreme Court. The master, holding, as matter of law, that plaintiff was the sole judge of the right to cross the tracks of defendant company, recommended a decree regulating the mode of crossing. The court, McPHERSON, J., of the 12th judicial district, specially presiding, entered a decree.

*Errors assigned, inter alia,* were the above finding of law, quoting it.

*William H. Sponsler* and *George F. Baer,* for appellant.— The Act of Feb. 19, 1849, § 10, P. L. 83, gave a general authority to construct a railroad between termini. The right

to cross the tracks of another company arises by necessary implication when the points cannot be reached in any other manner: Mills, Em. Domain, § 46; Lewis, Em. Domain, §§ 267, 270, 276; Housatonic R. R. v. R. R., 118 Mass. 391; Prov. & Wor. R. R. v. R. R., 138 Mass. 277; Buffalo City, 68 N. Y. 167–75.    Latitudinal and longitudinal occupation are both founded on necessity, the necessity being more obvious in one case than another: Springfield v. Conn. River R. R., 4 Cush. 63.    See also Lewis v. Germantown, etc., R. R., 16 Phila. 608. Such crossing is a taking and can be justified only by actual necessity: Rohrer, Railroads, 284; Little Miami, etc., R. R. v. Dayton, 23 Ohio 510; Rochester Water Comrs., 66 N. J. 413; 14 A. & E. R. R. Rep. 76, note by Lawrence Lewis.

The Act of April 4, 1868, § 10, intended to enact in express terms what theretofore existed by necessary implication.    If it was not this, it was even more contracted—simply to mention the right by way of introduction to the regulations enacted in the same section under the police power of the state.    This court has stated the object of the Act, in harmony with this interpretation, in Edgewood R. R. Co.'s Ap., 79 Pa. 269.

The Act of June 19, 1871, shows this to be the proper interpretation, as the attempt to confine grade crossings to cases where no other kind is reasonably practicable would be inconsistent if a road could cross where it is not actually necessary to cross at all.    The Act of 1871 further empowered the court to decide upon the validity of a claim of right to cross: Edgewood R. R. Co.'s Ap., 79 Pa. 269.    The purpose of the Act was to see that no unnecessary injury shall be perpetrated on the road crossed, and that grade crossings shall be prevented when reasonably practicable: Pitts. & Connelsville R. R. v. R. R., 77 Pa. 186.    Surely this does not mean that the court is powerless to decide whether there is a necessity to cross at all.

Section 10 of the Act of 1868, providing that companies formed under that Act "shall have the right" to cross other roads at grade, is to be read with its antecedents.    Similar language in the Act of Congress of March 3, 1875, U. S. Stat. 1874–5, p. 482, was construed as we contend, in R. R. v. Alling, 9 Otto, 463; Denver & Rio Grande R. R. v. R. R., 14 A. & E. R. R. Cas. 83.

Art. 17, § 1, of the constitution, does not change the policy

of the law as embodied in the Act of 1871: N. C. Ry. Co.'s Ap., 103 Pa. 621. A similar clause in the constitution of. Texas was construed in M., K. & T. R. R. v. R. R., 10 Fed. R. 497, and it was held that a paramount necessity must exist.

Our own cases all sustain our contention: Market St. Pass. Ry. v. Ry., 10 Phila. 43; Lewis v. R. R., 39 Leg. Int. 23; Pa. R. R. Co.'s Ap., 93 Pa. 150; Pittsburgh Junction R. R. Co.'s Ap., 122 Pa. 531; Sharon Ry. Co.'s Ap., 122 Pa. 545.

The cases relied upon by appellee apply to contests as to the rights of private property and not property already dedicated to public use. Private property is subject to the free choice of corporations with right of eminent domain, but the rule with public property is the very opposite. There must be an express grant or necessary implication.

The right to cross does not depend upon financial ability—or the poorer a company the more right she has to interfere with the franchises of the older company.

If the sovereign power here claimed exists with a board of directors of a railroad it is time it was known. Such claim was strongly repudiated in St. Paul & N. P. R. R., 30 A. & E. R. R. Cas. 294.

*B. F. Junkin* and *Charles A. Barnett*, with them *James W. Shull*, for appellee.—The Act of Feb. 19, 1849, confers power on directors to locate their road as they may deem expedient, with the exceptions named. The Act of 1868 expressly granted the right to cross others' railroads. The Act of 1871 provided for the regulations of the mode of such crossings, of necessity recognizing an existing right to cross. And finally the constitution provides that " every railroad company shall have the right." If construction were required for such language it is to be found in the following cases: Anspach v. Mahanoy & Broad Mountain R. R., 5 Phila. 492; Clarke v. Bridge Co., 41 Pa. 160; N. Y. & L. E. R. R. v. Young, 33 Pa. 182; Cleveland & Pittsb. R. R. v. Speer, 56 Pa. 334; Williamsport R. R. v. R. R., 141 Pa. 415; Struthers v. R. R., 87 Pa. 282; Pittsburgh Junction R. R. Co.'s Ap., 122 Pa. 529; Northern Cent. R. R. Co.'s Ap., 103 Pa. 628; Groff v. Turnpike, 144 Pa. 157.

The constitution declaring that " All railroads and canals shall be public highways," one railroad has as much right to

cross another as it has to cross a public road, or public roads have to cross a railroad, or to cross each other; the mode of crossing only is subject to regulation by the courts.

The law of eminent domain is inapplicable. The process for acquiring the exclusive possession of land for right of way is very different from the legislation regulating the mode in which crossings shall be made. The latter is a general police regulation by statute of special franchises derived through the delegated power of eminent domain. The right of one railroad to cross another is necessary to the prosperity of the state : Chicago & Allen R. R. v. R. R., 105 Ill. 389 ; 14 A. & E. R. R. Cas. 62.

OPINION BY MR. CHIEF JUSTICE PAXSON, July 13, 1892.

This was a case of grade crossing. The Newport & Sherman's Valley Railroad Company, appellant, was incorporated on the 31st day of July, 1890, to construct and operate a narrow gauge railroad from Newport to New Germantown, Perry county, Pa., a distance of thirty miles, and had constructed its road, and had the same in operation, as far as Loysville, an intermediate point along its line, prior to the time when the Perry County Railroad Extension Company obtained its charter. The latter company was incorporated to construct and operate a standard gauge road from Bloomfield to Landisburg with a branch to Loysville, all of which points are in the county of Perry, and all of them lying south, or to one side of the line of the Newport & Sherman's Valley Railroad. It has so located its road as to cross the road of the Newport & Sherman's Valley Railroad Company, and then recross it at a distance of about four miles, thus making a loop. It claims the right to construct both crossings at grade.

The appellant denied the right to cross at grade, and this bill was filed in the court below by the appellee to restrain appellant from interfering with such crossing. The learned court below sustained the bill filed by the appellee, decreed a grade crossing upon certain conditions, and enjoined the appellant from interfering with it. From this decree the latter entered an appeal.

It is a mistake to suppose that a railroad company, chartered under the Act of 1868 and its supplements, has an absolute

right to cross the line of a senior railroad at grade. The Act of the 19th of February, 1849, P. L. 83, entitled " An Act Regulating Railroad Companies," contains no express authority for crossing the tracks of another company. It gives a general authority to lay out and construct a railroad between designated termini. It follows that the right to cross, when absolutely necessary, follows by necessary implication, otherwise the grant, in some instances, would entirely fail, as, for instance, where another railroad lies between its termini. In such case, if it could not cross, it could not build its road.

The 5th section of the Act of 1868, under which the appellee was incorporated, provides: " And said corporations thus created, shall be entitled to exercise all the rights, powers and privileges . . . . of the Act regulating railroad companies, approved on the 19th day of February, 1849, and the several supplements thereto, as fully and as effectually as if said powers were specially incorporated in said charter." And the 10th section provides that: " Companies formed under the provisions of this Act shall have the right to construct roads so as to cross at grade the track or tracks of any other railroad in this commonwealth."

The object for which the Act of 1868 was passed is unmistakable. It was to vest in voluntary associations of individuals under definite, uniform and general rules, power which had previously been given, only by special Acts of incorporation : Edgewood Railroad Company's Appeal, 79 Pa. 257. The appellee contends that under this Act it has the absolute right to cross the track of any other railroad at grade, and that the nine men, or more, who obtained the charter, are the absolute judges of the location of their road, as well as of the necessity of crossing at grade. We need not speculate as to how this might have been, had the Act in question not been supplemented by subsequent legislation. The legislature, however, was quick to see that to permit any nine men, who saw proper to obtain a charter under the general railroad law, to cross and re-cross the line of another railroad at their will and pleasure, might be productive of disastrous consequences. They therefore enacted the Act of the 19th of June, 1871, P. L. 1360, the 2d section of which provides : " When such legal proceedings relate to crossings of lines of railroads by other railroads, it

shall be the duty of courts of equity of this commonwealth to ascertain and define, by their decree, the mode of such crossing which will inflict the least practical injury upon the rights of the company owning the road which is intended to be crossed; and if in the judgment of such court it is reasonably practical to avoid a grade crossing, they shall by their process prevent a crossing at grade."

In addition to the legislation referred to, the appellee invokes section 1, of article 17, of the constitution, as authority for crossing at grade. The section referred to is as follows: "Every railroad company shall have the right, with its road, to intersect, connect with, or cross any other railroad." It is sufficient to dismiss this section, with the remark that it does not refer to, or authorize grade crossings. It was doubtless passed to prevent railroad companies, occupying particular portions of territory, from interfering with the development of other sections, by unreasonably preventing a crossing. A decree preventing a grade crossing does not conflict with this provision of the constitution.

We must consider the legislation bearing upon this subject as a whole, and the Acts of 1849 and 1868, before referred to, as modified by the Act of 1871. The latter Act does not put the rights of the company, desiring to cross the railroad of another, on a level with the rights of that company, but manifestly declares them to be secondary. Two thoughts are clearly expressed in this statute, the one, that no unnecessary injury shall be perpetrated on the road sought to be crossed; the other, that crossings at grade shall be prevented whenever they can reasonably be avoided: Pittsburgh & Connelsville Railroad Co. v. The South West Railroad Co., 77 Pa. 173. In that case we held that the Act of 1868 did not give a railroad corporation an arbitrary right to cross another railroad, regardless of the rights of the corporation injured, and the safety of the public; and that the intent of the Act of 1871 is to discourage grade crossings, involving danger to the public, as well as injury to the company, whose road is crossed. A decree was entered, prohibiting a crossing at grade. Just here we will supplement the decision of that case by saying that the time for grade crossings in this state has passed. They ought not to be permitted, except in case of imperious necessity.

They admittedly involve great danger to life and property. In the earlier period of railroads this danger was overlooked or, at least, disregarded. The desire of the people for this species of improvements, tended to close their eyes to the dangers involved. The traffic then upon railroads was comparatively light, and trains ran at long intervals. The rapid development of the country, the enormous growth in wealth, population and business, has materially changed the relations of railroads to the public and to each other. The result is that we now see railroad companies and municipalities spending enormous sums of money in correcting the defects of earlier railroad construction, and especially in avoiding grade crossings. We must, therefore, construe the Act of 1871 in accordance with our present surroundings.

The appellee contends that it ought to be permitted to cross at grade, because its capital is only $100,000, and to avoid such crossing, would require more money than its means will permit; and also, that it is a local road through a sparsely settled country, with but a limited amount of business and but few trains. In regard to the last objection, it is sufficient to say that it is our duty to anticipate the future. A railroad which is now of small importance, by the changes and combinations constantly taking place between railroad companies, may at any time become an important, if not a trunk road. An evil of this description, when once fastened upon a railroad, becomes a fixture for all time. If it is to be avoided at all, it must be done now.

The fact that the capital of the appellee is limited, is not a sufficient reason to justify a grade crossing. Otherwise, a railroad company without capital, or a sufficient capital to build it properly, would have higher rights in this respect than a company with abundant means. A railroad company will not be permitted to interfere with the franchises of another railroad company, merely to avoid expense: Pennsylvania Railroad Company's Appeal, 93 Pa. 150 ; Pittsburgh Junction Railroad Company's Appeal, 122 Id. 531 ; Sherman Company's Appeal, Id. 545.

The evidence in the case abundantly shows that the appellee might have located its road upon a reasonably inexpensive and practicable route south of the appellant's road. The cost of

the re-location of their road upon this route, involving the
tearing up and abandoning of a portion of track, already built,
would cost about $20,000, according to the finding of the
master.  It also appears that, if constructed upon this route, it
would reach all the objective points, and get all the business
that it would upon the line adopted.   While the learned mas-
ter heard the testimony upon this point, he held that it was
irrelevant and immaterial, " for the reason that the plaintiff,
having, without caprice, and according to the best judgment,
honestly selected, laid out and adopted its route, and graded the
same, had a right to construct and operate its road upon the
same, even if it did cross defendant's track at two places, be-
cause this was a right clearly given to it, by the several Acts of
Assembly of Pennsylvania, to wit: the Acts of 10th of Feb-
ruary, 1849, 4th of April, 1868, and 19th of June, 1871 ; also
article 17, section 1, of the Constitution of Pennslyvania of
1874."

The master further finds : " That it is not practicable for
the plaintiff company, with its tracks to cross or pass over the
defendant company's tracks at the two proposed crossings, or at
any other points either below grade or above grade, because of
the steep grades of both of said roads at the points of the
proposed crossing of David Tressler's farm, and which would
necessitate the expenditure of about $40,000, as is shown by
the undisputed testimony in this case, which is almost one
half of the authorized capital stock of this company."

If we concede that it is not practicable to construct an over-
head crossing by reason of the heavy grade at this point, it does
not help the appellee.   The necessity to cross at grade was a
necessity of its own creation.   It might, and should have so
located its road as to avoid crossings altogether.   I doubt, if in
the history of railroad engineering in this state, an instance
can be found, of one road crossing another at grade, and by a
loop re-crossing it at grade within four miles, when another
reasonably practicable route was open for its location, which
would have avoided crossings altogether.   Such railroading as
this is not to be encouraged.   It would be well for railroad
companies, when locating their road, so as to cross another
railroad, to consider well the mode of crossing, and the possi-
bility of other locations by means of which such crossings may
be avoided.

The decree is reversed at the costs of the appellees, and it is now ordered that the Perry County Railroad Extension Company be perpetually enjoined against crossing the tracks of the Newport & Sherman's Valley Railroad Company at grade, and that the plaintiff's bill be dismissed with costs.