# Tamaqua & Lansford Street Railway *v.* Inter-County Street Railway, Appellant.

[Marked to be reported.]

*Street railways—Consent of supervisor—Fraud.*

A consent by a supervisor to the use of the township roads by a street railway company is invalid, where it appears that it was extorted from him by the threat to have him arrested for fraudulently giving his consent to another company for a private consideration, followed by a promise to give him the same consideration.

Consent of supervisors to be valid should be given at a regular or special meeting, and entered upon the books of the township in the possession of the town clerk.

Where one street railway company filed a bill in equity against another street railway company for an injunction to restrain the defendant from occupying a township road, a decree in favor of the plaintiff will not be reversed, on the ground that the plaintiff company itself had no valid consent to occupy the road in dispute.

Argued Feb. 20, 1895.    Appeal, No. 260, Jan. T., 1895, by defendant, from decree of C. P. Schuylkill Co., Nov. T., 1894, No. 1, on bill in equity.    Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ.    Affirmed.

Bill in equity for an injunction to restrain the construction of an electric railway on a township road leading from the borough of Tamaqua to the borough of Lansford.

From the record it appeared that complainant was incorporated under the act of May 14, 1889, on November 2, 1891; the respondent, on April 27, 1894.    The former obtained consent from the "local authority" of Rahn township May 9,

1894, and the latter May 1, 1894. The complainant filed a bill in equity and alleged that the respondent obtained its "consent" through bribery. The respondent filed its answer denying the allegation. A preliminary injunction was granted. The case was argued upon the pleadings and testimony taken in a case practically involving the same subjects, and which was agreed to be adopted as the testimony in this case.

From the testimony it appeared that Morris Coll, supervisor of Rahn township had given his consent in writing that the Inter-County Street Railway Company should use the road from Tamaqua to Lansford. By a writing executed at the same time, the Inter-County Street Railway Co. agreed that if Coll and his son were discharged by the Lehigh Coal and Navigation Company from their employment in that company, they should receive employment by the Inter-County Street Railway Company at certain specified wages per day.

Other facts appear by the opinion of the court below by WEIDMAN, J., the material parts of which are as follows :

"[Whether the signing of consent to the defendants by Coll on May 2, 1894, was on a paper prepared before that date, executed and delivered then to Boyle, to be held by him until the agreement in evidence was satisfactory to Coll, and then delivered by him to Riebe for defendants (as seems to have been testified), or whether the agreement in evidence, and above described, was the only evidence of Coll's consent given to the defendant company, seems to be immaterial : for the reason that the evidence clearly shows that both Coll and the defendants clearly understood that until the consideration personal to the supervisor was secured by a written agreement, the consent was not to be operative.] [2] When the first agreement was condemned by Coll as not providing for him if he was not discharged, and the defendants at once executed another agreement covering Coll's claim as it has been understood between them, it became manifest that Coll was not disposed to treat their personal consideration as an "after consideration," as construed by Mr. Krebs, but as an essential consideration without which they could not receive the evidence of his consent. So also the agreement in evidence, 'Witnesseth, that the said party of the first part do hereby promise and agree that in consideration of the said party of the second part signing the rights

of way for the building of an electric railway in and upon the highways of Rahn township,' to give employment to Coll, etc. [My conclusion is that this agreement was not delivered until 7 P. M. of May 9.] [3] The copy of the agreement appearing on the record does not show that it was signed by Coll: so that unless there was another paper evidencing his consent, such consent must be inferred from his acceptance of their agreement, or rest upon a parol consent. That he did consent finally on May 9th, there is no dispute. Ought such a contract, or such a consent, to stand? Complainants have proved that the contract of consent was made by the supervisor alone, and without making a record of it upon the township books, and without consulting with the auditors or having their consent. They have not furnished the court with any statute or decision which tends to show that the auditors have any share in the responsibilities of the supervisor for the care or condition of the roads and, as it is conceded that the law as to Rahn township only requires one supervisor, there is no force in the objection that in this respect he was not the 'local authority,' whose consent the act of 1889 requires.

"There is, however, fatal force in their objection that the contract of consent was founded upon an immoral, if not a criminal, consideration. From Grant v. Erie, 69 Pa. 422; Dechert v. Commonwealth, 113 Pa. 229; Raudenbush's Petition, 120 Pa. 328, we are asked to infer that we have no jurisdiction to inquire into this question. Grant v. Erie decided that where an act of assembly empowered a city to build a sufficient number of reservoirs to supply water in case of fire, and the council constructed them but allowed one to get out of repair so that it would not hold water, the owner of a near-by property destroyed by fire could not recover against the city, alleging that the loss occurred by reason of the fact that by this negligence of the city no water could be obtained; that it was discretionary with the city to construct the reservoirs, and they were not liable; Dechert v. Commonwealth decides that the city controller of Philadelphia has a judicial discretion as to whether he will or will not countersign a warrant; that mandamus may be awarded in such a case to set public officers in motion as to acts and duties necessarily calling for the exercise of their discretion, but will not control or interfere with the exercise of

that discretion or dictate what the decision shall be. Raudenbush's Petition decides that the Supreme Court will not review the manner in which the lower courts have exercised their discretion in granting or refusing retail liquor licenses. I do not regard these cases as precedents to guide the case before the court in which the natural, and as it seems to me the irresistible inference, from undisputed facts, is that the supervisor refused to deliver his contract of consent to these defendants except at the price of a consideration, payable to himself and not to the public whose rights he was thus selling; a consideration not in good faith solely providing against his discharge for doing his duty, but a consideration providing for himself in case he was not discharged. He was dealing with a discretion vested in him as a public office for the public benefit as if it was his private property which he could sell for his personal profit. No argument is required to show that a consent thus obtained finds no warrant in the act of 1889, in morals or in public policy. " In general, if any part of the entire consideration for a promise, or any part of an entire promise, be illegal, whether by statute or common law, the whole contract is void. Indeed the courts go far in refusing to found any rights upon wrong doing: " Parsons on Contracts, 5th ed. (p. 456). " If any part of a consideration is illegal the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected with this act or promise another which is legal: " Id. 457. See also Filson's Trustees v. Himes, 5 Pa. 452; Clippinger v. Hepbaugh, 5 W. & S. 315; Berdin's Appeal, 92 Pa. 241. [This supervisor refused to grant his consent upon the agreement providing for his employment in case of his discharge, and only delivered it when assured that he would be employed for life at increased wages whether discharged or not. A grant founded upon such a consideration is not to be sustained, and must be declared void.] [4] . . . .

" According to this story Mr. Farquhar, attorney for complainants, requested him to sign a right of way, and he objected that if he did he might be punished, because he had already signed such an agreement for the defendants; and that Mr. Farquhar then read out of a book to him to show him that that would not prevent him from signing the second paper. He

says that he didn't bother with that, and then Farquhar read out of his book again that he had committed crime enough to go to the penitentiary. Then Spiese told him that he had done enough to go to jail; that he wouldn't sign for them. Then Kennedy and Zehner consulted in private and Kennedy came to him and told him that if he didn't sign that paper Zehner would send for a constable to take him to jail. He told them to go to hell; at one time he and Farquhar were alone in the room and he got up to go out, when Farquhar got up and told him that he couldn't go out until his case was settled. About ten minutes after that he went out, when McLaughlin followed him. He tried to get away from him, but could not, and then McLaughlin told him that he couldn't get away until this thing was settled. Then he and McLaughlin went back to the stairs leading up to the room where they had been before and sat there and McLaughlin was 'coaxing,' and he then said he would sign if Zehner would give him the same agreement that the Inter-County Company had made, and they agreed to it and then he signed. The only time when he was afraid, according to his statement, was when McLaughlin threatened to get the constable; but he did not leave the room when Farquhar threatened him. The interviews further testified to, that is, the visits of the priests and the call with Boner upon Zehner relate to subsequent efforts to get from him the agreement that he had made with the Inter-County Company and to get his assistance in the present suit when the bill was to be filed.

"Accepting Coll's own statement, he persisted in his refusal to sign the agreement until Zehner and McLaughlin promised him the same terms as the Inter-County Company had agreed to : Then he went into the room where the conference had been previously held, and signed the paper. Besides this, all the others present, except Mr. Farquhar, were examined; they all deny that any promises or threats were made at any time during the two hours at Tamaqua whilst this negotiation was going on. One or two of the witnesses were not in the room all of the time from the beginning of the negotiation to the end; others say that they were in the room all of the time, and that Farquhar was not alone with Coll at any time from the beginning of the negotiation to the end. Zehner and McLaughlin deny distinctly that they made any promises to Coll in consid-

eration of his signing, and assert that, on the contrary, they distinctly told him that such promises would be illegal, and that they could not do it. Upon this showing it would be unreasonable to say that the testimony of Morris Coll should prevail against the testimony of the other witnesses not impeached, except by the conflicting testimony of Morris Coll, and that a fair inference from this record is that this contract was procured by fraud or coercion. It is true that the testimony also shows that he was dealing with men who were high in authority in the company in which he had been in humble service, who had loaned, or advanced, his pay to him, as a supervisor, before it was due, on his promise that he would not grant this particular right of way without letting them know in advance, and who were known to him, probably, as opposed to the building of any railroad there. Who had by threats and persuasion prevented the earlier building of complainants' road, and were now allied with complainants to secure the privileges because a rival had come upon the field. Still the testimony in reference to what occurred at the time when the contract was executed seems to warrant the conclusion that the representation and threats, combined with the surroundings above alluded to, did not move him until Zehner and McLaughlin agreed to do as well for him as the Inter-County Company. Nor can the fact be lost sight of that the influences of his employers might have led to his yielding to their persuasion, as complainants' witnesses say that it did. [Where the evidence is directly conflicting, as it is in this case, we have no other guide to a conclusion than the seeming preponderance, and tested by that the evidence does not seem to warrant the setting aside of the formal contract executed by the supervisor.] [5]

"In view, however, of the views expressed to-day in an opinion filed in No. 2, Nov. Term, 1894, Rahn Township v. The Tamaqua and Lansford Street Railway Company, it is not important whether this is a just view of the evidence on this subject or not: for in that case the conclusion is reached that upon other grounds this company must be enjoined from constructing their railway under their agreement with the supervisor.

"The second objection is based on the act of 1883 (P. L. 123), § 5. 'That any corporation of the second class, created

under the provisions of the act to which this is a supplement, or any of its supplements, that shall not within two years from the date of its letters patent proceed in good faith to organize and to do the things contemplated by its charter, and have paid up at least one-fourth of its capital, shall be held and deemed to have forfeited its charter, and the attorney general shall, on the application of any citizen, take the proper legal steps to forfeit and vacate its said charter,' etc.

" This, by its terms, applies to such corporations as are created under the act of 1874, or any of its supplements. There is nothing in the act of 1889 which indicates that it was enacted as a supplement to that act. Even, assuming that it does apply to the act of 1889, the act contemplates that the enforcement of the forfeiture shall be by 'proper legal steps' through the attorney general. And that such a forfeiture cannot be adjudged in a collateral proceeding, such as this, is well settled : Man. etc. of C. & K. T. R. Co. v. McConaby, 16 S. & R. 140 ; Commonwealth v. The Erie & N. E. R. Co., 27 Pa. 339 ; Clarke v. The Birmingham and P. B. Co., 41 Pa. 147. See also Larimer & L. St. R. Co. v. Larimer St. R. Co., 137 Pa. 533 ; Lejee v. The Continental R. Co., 2 W. N. C. 170 ; Collins v. N. E. R. Co., 2 Dist. Rep. 417, which hold that the act of 1871 confers no jurisdiction in favor of a private party to enjoin a public nuisance. And if the grant of the right of way to defendants over this road is invalid as above decided, then there could be no private damage to the defendants which would justify an interference with complainants on their application. If they were complainants their contention would not avail them ; much less should it avail them as a defense : Western Pa. R. Co.'s App., 104 Pa. 406 ; Union St. R. Co. v. Hazleton Ry., 154 Pa. 422.

" The third objection is disposed of by our Supreme Court in Germantown Pass. R. Co. v. Citizens' Pass. R. Co., 151 Pa. 138, which decides that under the act of 1871 a street railway has a standing as a complainant in a bill in equity to restrain another company from unlawfully laying tracks in a street already occupied by the complainant.

" [And now, November 26, 1894, it is adjudged and decreed that the said The Inter-County Street Railway Company, its officers, agents, contractors and employees, be restrained by injunction to issue forthwith from constructing, maintaining or

operating a street railway on or over the public road in Rahn township, leading from the borough of Tamaqua to the borough of Lansford, and from entering upon or further interfering with said public road for that purpose.] " [1]

*Errors assigned* were (1) above decree, quoting it; (2–5) portions of opinion as above, quoting them; (6) in holding that the complainants' charter had not been abandoned, and the rights under the charter forfeited by the lapse of time; (7) that appellees had no standing in court to raise the question presented by their bill.

*J. O. Ulrich* and *James Ryon, L. W. Barringer* with them, for appellant.—The appellee was not a purchaser for value, and it had full notice of the fact that a prior right of way or consent had been executed to the appellant. The consent to appellee was delivered to Boyle to hold until the appellee should execute a collateral agreement. An escrow is said to be the conditional delivery of an obligation, to take effect on the happening of some event consistent with the instrument: Hilliard on Real Estate, 303; 6 E. & A. Ency. of Law, 866.

The supervisor was not a free man; he was under the dictation of the company, and under its control. Under such a state of facts, the appellant claims that the stipulation to pay the supervisor for work he should do for their company, was neither illegal, nor immoral, nor contrary to public policy, nor unreasonable: Swan v. Scott, 11 S. & R. 164; Johnson v. Hulings, 103 Pa. 504; Wright v. Pipe Line Co., 101 Pa. 204; Heffner v. Com., 28 Pa. 108; Larimer Ry. v. Ry. Co., 137 Pa. 547; Reading v. Com., 11 Pa. 196.

The act of June 19, 1871, P. L. 1360, does not avail the complainants: Market Co. v. P. & R. Co., 142 Pa. 580; Lejee v. Continental Passenger R. Co., 10 Phila. 362; Cochran v. Arnold, 58 Pa. 399; Garrett v. Dillsburg and Mechanicsburg R. R. Co., 78 Pa. 465; Cleveland, etc., R. R. v. Erie, 27 Pa. 380; Weimer on Railroads, page 919; Booth on Street Railway Law, sections 44 and 49; Folger v. Columbia Insurance Co., 99 Mass. 274; Phila. and Gray's Ferry Pass. R. Appeal, 102 Pa. 123; Rafferty v. Central Traction Co., 147 Pa. 579.

The agreement on the part of the respondent company to

give the supervisor employment was neither unreasonable nor illegal: Allegheny City v. Millville R. R., 159 Pa. 411.

After an act has been done by a corporation involving the question of the exercise of its corporate franchises no one can complain except the commonwealth : Cleveland, etc., R. R. v. Speer, 56 Pa. 322; Monongahela Bridge Co. v. Kirk., 46 Pa. 130 ; Sparhawk v. Pass. R. R., 54 Pa. 421; Allegheny City v. Millville R. R., 159 Pa. 411.

A court of equity cannot interfere with the exercise of the discretion of any officer invested with the same : Larimer Railway Co. v. Railway Co., 137 Pa. 536; Commonwealth v. Pittsburg, 34 Pa. 517 ; Grant v. Erie, 69 Pa. 422; Dechert v. Commonwealth, 113 Pa. 229; Raudenbusch's Petition, 120 Pa. 328.

The complainant has no standing in court because it is a corporation dead in law: Com. v. Lykens Water Co., 110 Pa. 391 ; Com. v. Erie, 27 Pa. 339; Junction Pass. R. R. v. Williamsport Pass. R. R., 154 Pa. 116 ; Phila. v. Citizens Pass. R. R., 151 Pa. 128.

The supervisor was the proper " local authority " to grant " consent." The auditors have nothing to do with it : Hain v. Lebanon and Annville R. R., 1 Dist. Rep. 542 ; Cooper v. Lampeter Twp., 8 Watts, 125.

The complainants' bill should have been dismissed for want of proper parties : Miller's App., 159 Pa. 573 ; Larimer St. v. Railway Co., 137 Pa. 533.

The complainant's bill does not aver that the respondent company entered upon the public road and began the construction of its street railway without authority of law, which is a fatal defect: Kemble v. R. R., 140 Pa. 14; Booth on Street Railways, sec. 10.

As between the township of Rahn, and the Inter-County Railway Company the consent of May 1, 1894, was in effect, and was in force from its date ; even if it was held in escrow until some condition was performed; and a subsequent consent, with knowledge of the former grant, would avail nothing against the grant of May 1: Stephens v. Huss, 54 Pa. 20 ; Rafferty v. Central Traction Co., 147 Pa. 579.

The complainant is a stranger to the grant from the supervisor to the respondent, and also a stranger to the consideration

and collateral agreement and has no right which complainant can assert in any shape: Blymire v. Boistle, 6 Watts, 182; Roberston & Co. v. Reed, 47 Pa. 115: Kountz v. Holthouse, 85 Pa. 235.

There is only one road through Rahn township between the boroughs of Tamaqua and Lansford. The respondent company has the consent of the local authorities of all the municipalities through which its route passes. The route must be continuous: Phila. & Reading R. R. v. K. & T. R. R., 23 W. N. C. 182; Cent. Tel. Co. v. Wilkes-Barre R. R., 1 Dist. Rep. 630.

If a company does not build the road it is chartered to build, it is illegal and a nuisance, and cannot have any standing in a court of equity upon the ground that it has rights which are interfered with by a similar corporation clothed with all legal requisites: Junction Pass. R. R. v. Williamsport Pass. Ry., 154 Pa. 116; Commonwealth v. Erie, 27 Pa. 339; People v. Albany R. R. Co., 24 N. Y. 261; Martin v. 2d & 3d Sts. R. Co., 3 Phila. 316; Booth on Street Railway Law, sections 56, 62.

The charter of incorporation of a regularly incorporated company cannot be called in question or assailed in any merely collateral suit: Junction Pass. Ry. v. Williamsport Pass. Ry., 154 Pa. 116; Western Penna. R. R. Co.'s App., 104 Pa. 399.

*Fergus G. Farquhar* and *John W. Ryon, George M. Roads* with them, for appellee.

Opinion by Mr. Justice Williams, March 25, 1895:

The question raised by the first, second, third and fourth assignments of error has just been decided in the Lehigh Coal and Navigation Company v. The Inter County-Street Railway Company, ante, p. 75. It is not necessary to repeat what is there said. We have no doubt that the consent obtained from Coll was invalid for the reason stated by the learned judge of the court below, and for the further reason stated in the Penna. Schuylkill Valley Railroad Company v. The Montgomery County Street Railway Company, ante, p. 62, also decided at the present term. It was the action of an individual upon a consideration moving to him as an individual, and not the action of an officer, appearing upon the records of the township where the evidence of official action should appear.

The fifth assignment is sustained.   When a corporation comes into a court of equity claiming rights against the public under an agreement purporting to be executed by township officers the agreement should be conscionable and it should have been obtained by fair and conscionable methods.   The learned judge found the evidence relating to the execution of the consent by Coll to the Tamaqua and Lansford Company to be directly conflicting, and he adopted the rule of law saying " We have no other guide than the seeming preponderance " of the testimony, and testing the validity of the alleged consent of the local authorities of Rahn township by what seemed to him to be the preponderance of a mass of contradictory testimony, he sustained the validity of the consent.   We find no fault with the view of the learned judge as to the existence of a " seeming preponderance," but we cannot agree that the chancellor was bound by it.   On the contrary, we hold that the alleged consent was ineffective for two reasons:   First, it was extorted from the individual who held the office of supervisor by methods that a court of equity cannot approve, and it ought not in fairness towards the citizens and taxpayers of the township to be held binding upon them for this reason if for no other. But second, another and a sufficient reason is found in the fact that the giving of the alleged consent was not an official act. The time, the place, the occasion, were of the appointment of the company and for their benefit.   The action was not taken at a meeting of the supervisors regular or special.   It was not entered upon the books of the township in the possession of the town clerk.   No record of any sort was made of what was done because no official action was taken.   A frightened man executed a paper adding his official title to his name, but this did not make it the official action of the supervisors.   This was a subject for deliberation, a subject of importance, not to the man but to the township whose officer he was, and the action should have been taken upon an intelligent consideration of the interests of the township and regularly entered on the proper township book.   The evidence of such an official act should not rest upon a piece of paper in the pocket of a private individual who may not be a citizen of the township or within reach of its taxpayers.

But this conclusion does not require us to reverse the decree.

The defendant is absolutely without authority to occupy the township roads and the injunction was properly ordered. The plaintiff held a charter which the commonwealth had not disturbed and which conferred a right, prima facie, to secure consent and proceed with the building of its roads if the township and the property holders were willing. This consent it claimed to have. It had a right to be heard therefore upon the validity of the consent of the township set up by the defendant in opposition to that held by itself. Both grants could not stand. Each contended that the grant to the other was bad. Both were right.

The fact that neither company has a valid consent from the township to occupy the public roads under the papers now before us, is no reason why the injunction ordered in this case should not stand.

The decree is affirmed. The costs to be paid by the appellant.