Scranton & Pittston Traction Company *v.* The President, Managers and Company of the Delaware & Hudson Canal Co., Appellants.

The President, Managers and Company of the Delaware & Hudson Canal Company, Lessees, Appellants, *v.* The Lackawanna Street Railway Company and The Scranton & Pittston Traction Company, Lessees.

*Street railways—Municipal consent to lay tracks on township road.*

A traction company, with the consent of the local authorities, has the legal right to lay its tracks upon a public township road except in so far as the adjoining property holders may call their right in question on the ground that such local authorities have no power to impose additional servitude upon the land of abutting owners.

*Street railways—Use of township road—Adjoining property owners.*

In a question involving the right of a traction company, using a township road, to cross a steam railroad at grade, the railroad company objecting to the grade crossing is not such an adjoining property owner as would be entitled to call in question the right of the traction company to lay its tracks on a township road, where the consent of the local authorities has been duly given.

*Municipal law—Evidence—Proof of municipal action.*

The acts of municipal corporation can be proven otherwise than by the minutes of its councils or records even though it was its duty "to keep a fair and regular record of its proceedings."

*Municipal consent—Regularity of proceedings considered.*

The official consent of supervisors to a traction company to lay its tracks on a township road, may be said to have been regularly and properly given when the proof shows that action was taken after four meetings to deliberate upon and discuss what their action should be and that their final determination was arrived at after they had met for that purpose.

*Railroads—Street railroads—Grade crossings.*

It is well settled that the time for grade crossings has passed and that they will not be permitted except in cases of imperious necessity, as they admittedly involve great danger to life and property.

The admitted rule in this state therefore is that grade crossings are to be

avoided where it is reasonably practicable and unless their exists an imperious necessity for their construction.

*Grade crossings—Responsibility of courts of equity.*

The act of June 11, 1871, P. L. 1380, imposes on courts of equity the duty of ascertaining and defining the mode of establishing the crossings of railroads at grade, and is an exercise of the police power of the state over railroads.

In the exercise of such power the courts cannot give such street railroad the right to use any portion of the public highway as an elevated railway; nor to build an elevated bridge upon any portion of the highway nor to exercise the right of eminent domain; they have the power to compel street railways to cross a railroad crossing either above or below grade in a suitable case, without their possessing the right of eminent domain or without their occupying any public street or road. They can compel them to acquire private property by purchase, so as to enable them to cross in any way designated by the court, but what the court should do must be determined by the circumstances of the case and each case must be determined upon its merits. Where the court below has found that an imperious necessity exists for a grade crossing and has allowed the same, the appellate court will not reverse when an order to compel a crossing other than a grade crossing at a particular point would involve the traction company in so great an expense as almost to amount to a denial of their right to cross railroad tracks.

Argued Jan. 14 and 15, 1896. Appeals Nos. 1 and 2, Jan.T., 1896, from the decrees of C. P. Lackawanna Co., Nov. T., 1894, No. 7, granting an injunction to restrain defendants, The Delaware & Hudson Canal Co., from interfering with the construction of street railway tracks of plaintiff, the Scranton & Pittston Co., across tracks of defendants' railroad at grade, and Nov. T., 1894, No. 8, dismissing a bill for injunction to restrain defendants, The Lackawanna Street Railway Co. and the Scranton & Pittston Traction Co., from interfering with the railroad tracks of plaintiffs and from crossing at grade the tracks of plaintiffs, the Delaware & Hudson Canal Co. Before RICE P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed. ORLADY and BEAVER, JJ., dissent.

Bills in equity were filed by both appellants and appellee as above indicated and the cases were heard and decided together.

It appeared from the pleadings and proof that the Delaware & Hudson Canal Co. are the lessees of the Northern Coal & Iron Co., owners of a double track steam railroad running between the cities of Scranton and Wilkes-Barre, over which pass

about one hundred and forty trains each day. The railroad passes through the township of Lackawanna and across a public highway at grade in said township at two points known as Wyoming avenue and Spring street. At Wyoming avenue the railroad depot is situated, and the Northern Coal & Iron Co. are the owners in fee of the land adjoining and covering the highway where the railroad crosses the same. The Lackawanna Street Railway Co. organized under the act of March 14, 1889, P. L. 211, had been leased by the Scranton & Pittston Traction Co., which had obtained rights to lay its tracks from the local authorities on the streets and roads crossing the railroad at the points above mentioned. Objection was raised by the Delaware & Hudson Canal Co. to crossing their tracks at grade, because (*a*) there was no necessity for so doing; and (*b*) because the street railroad law gave them no rights to lay tracks upon township roads, and they had acquired no rights from the abutters on said road. The court below granted an injunction until final hearing, and upon final hearing restrained the traction company from crossing at grade at Spring street, but permitted them to cross at grade at Wyoming avenue.

*Errors assigned* (1–16) were to the findings of fact that there was an imperious necessity for a grade crossing at Wyoming avenue, that there was no question of the right of abutting owners, and to the decree authorizing a grade crossing of the tracks of the railroad by the street railway company. The validity of the consent of the local authorities, the constitutionality of the act of May 14, 1889, and the want of power under the street railway law to build tracks on the township road, were also raised by the exceptions.

*W. H. Jessup, A. H. McClintock, James H. Torrey, Horace E. Hand* and *W. H. Jessup, Jr.*, with him, for appellants.

*Lemuel Amerman, L. A. Watres*, with him, for appellees.

OPINION BY REEDER, J., April 13, 1896:

These two cases were heard and disposed of together and were so argued before this court upon appeal.

The primary question for our consideration is whether the

traction company has a legal right to lay its tracks upon a public township road?

The act of 23d of May, 1878, P. L. 111, provided for the construction, maintaining and operating of street railways. The 16th section declares that " no street passenger railway shall be constructed within the limits of any city, borough, or township without the consent of the local authorities." No power of eminent domain was conferred on these companies, but the provisions of this act seem clearly to indicate that their tracks were to be laid upon the public streets or roads, and were to conform to the established grade. The 16th section of the act indicates that the act was not simply intended to authorize the construction of street railways in cities, for it provides that any construction of a street railway in any " city, borough, or township " must be by the consent of the local authorities. The act of the 14th of May, 1889, authorized street railway companies to construct and maintain a street railway on any street or highway upon which no track had been laid or authorized to be laid.

The Scranton & Pittston Traction Company was incorporated under the act of March 22, 1887. They leased the Lackawanna Street Railway Company which was incorporated under the act of May 14, 1889. The points in dispute are included in the construction authorized by the charter of the Lackawanna Street Railway Company. The 18th section of the act of 1889 provides, " Any company incorporated under the provisions of this act shall have the right in its construction to cross at grade diagonally or transversely any railroad operated by steam or otherwise now or hereafter built." The 15th section provides that " no passenger railway shall be constructed by any company incorporated under this act within the limits of any city, borough or township without the consent of the local authorities thereof."

In the case of Pennsylvania Railway Company v. Montgomery County Passenger Railway Company, 167 Pa. 62, the Supreme Court says: " The land taken for streets in cities and boroughs is in the exclusive possession of the municipality which may use the footway as well as the cartway for any urban servitude without further compensation to the lot owners. Provost v. Water Company, 162 Pa. 275; Reading v. Davis, 153 Pa. 360,

McDevitt v. The Gas Company, 160 Pa. 367. Nor does the construction of a street railway upon the surface of a street impose an additional servitude upon the property fronting on the street so occupied: Rafferty v. The Traction Company, 147 Pa. 579. But the easement acquired by the public by proceedings under the road laws is an easement for passage only. The owner is entitled to the possession of his land for all other purposes." The appellant claims that under and by virtue of this decision street railway companies have no legal right to lay their tracks upon ordinary township roads. We do not understand Penna. R. R. v. Montgomery Co. Ry. to so decide. So far as the use by the public of the roads is concerned they are subject to the limitations of the act of 1889. The supervisors are empowered by that act to consent to the laying of street railway tracks upon the road, but they have no power to impose an additional servitude upon the land of the adjoining or abutting property owners. Justice WILLIAMS says, "When the supervisors give their consent to the occupation of the township roads by a street railway they speak as the representatives of those who build and those who use the road, but not as the representatives of the private property over which it passes." That is to say when a street railway company under and in pursuance of ample authority conferred upon them by their charter, having the consent of the supervisors, attempt to build a street railway upon a township road, the only persons who can call their right in question are the adjoining property owners. The appellant in this case is not such an adjoining property owner.

Besides, this question while it was raised upon the argument is not to be found in the pleadings. In the answer filed by the appellant to the bill there is no averment made that the appellant was an adjoining property owner and no evidence taken to show that it was. The only issue to be passed upon in a suit in equity is that raised by the pleadings. Thompson's Appeal, 126 Pa. 367.

The appellant further contends that there was no valid consent given by the supervisors to the Traction Company to build their tracks upon the road. The testimony of P. C. Connelly one of the two supervisors discloses that he and the other supervisor Wm. R. Jones met three times in Lackawanna township and discussed the application of the Traction Company to lay

their tracks upon this road; that the supervisors had no regu
lar place of meeting; and kept no minutes of their proceedings;
that at a meeting in an office at Scranton they executed the
paper offered in evidence consenting to the building of their
tracks by the Lackawanna Street Railway Company under
whose right the plaintiffs were proceeding; that three several
companies wanted this right; "and Wm. R. Jones and myself"
to quote his own words "were several times asked by those
different parties for our consent to give them the right of way,
so we met and decided to grant the right of way to the Lack-
awanna Street Railway Company. This paper was not ready
at the time and when it was I signed it and presented it to Mr.
Jones afterwards and he signed it." The appellant claims that
under the decision of the Supreme Court in Penn. R. R. Co.
v. Mont. Pass. Ry. Co., supra, and Tamaqua and Lansford
Street Railway Company v. Inter County Street Railway Com-
pany, 167 Pa. 91, this method of granting and securing consent
is insufficient. I do not so interpret the opinion of Justice
WILLIAMS in those cases. In the first case he says, "In such
cases the supervisors must be together and their action must
be taken in their official character and should appear on the
township books kept by the clerk. If not so taken it does not
bind the township and has no validity." Of course it must be
action taken officially and if not so taken is invalid and it
should appear upon the books of the township, but there is no-
where any intimation even in those cases if it does not so ap-
pear upon the records of the township that such action is invalid.
The only proof in this case is that action was taken after four
meetings to deliberate upon and discuss what their action should
be and their final determination was arrived at after they had
met for that purpose. In the case of Tamaqua and Lansford
Street Railway v. Inter County Street Railway Justice WIL-
LIAMS says, "The action was not taken at a meeting of the
supervisors regular or special. It was not entered upon the
books of the township in the possession of the town clerk.
No record of any sort was made of what was done because no
official action was taken. A frightened man executed a paper
adding his official title to his name but this did not make it the
official action of the supervisors." A very different action from
that taken in this case by the supervisors. Indeed the whole

contention of the appellants upon this question seems to be, because there was no entry upon the books of the township that therefore there is insufficient proof of the consent of the supervisors and that such proof cannot be supplied by oral testimony.   Such is not the law.   The acts of a municipal corporation can be proven otherwise than by the minutes of its councils or records even although it was its duty " to keep a fair and regular record of its proceedings : "  Bank v. Dandridge, 12 Wheat. 64 ;  Taylor v. Henry, 2 Pick. 403 ;  Dillon on Corporations, sections 235, 236, 237, 238, and cases there cited ; School Directors v. McBride, 22 Pa. 215 ;  Furniture Co. v. School Dist., 158 Pa. 42 ;  Roland v. School Dist., 161 Pa. 102.

The remaining question for our consideration is whether the court erred in directing a grade crossing.   The second section of the act of 1871 provides that " when such legal proceedings relate to the crossing of lines of railroads by other railroads it shall be the duty of courts of equity of this commonwealth to ascertain and define by their decree the mode of such crossing which will inflict the least injury upon the rights of the company owning the road which is intended to be crossed, and if in the judgment of such court it is reasonably practicable to avoid a grade crossing they shall by their process prevent a crossing at grade."   It was held in Penna. R. R. Co. v. Braddock Electric R. R. Co., 152 Pa. 116, that the duties imposed by the act of 1871 were not in any way restricted or limited by the act of March 14, 1889, which provides that " any company incorporated under the provisions of this act shall have the right in its construction to cross at grade, diagonally or transversely, any railroad operated by steam or otherwise now or hereafter built."   In the above case Justice STERRETT says, " We have no doubt electric railroads are within the provisions of the act of 1871.   They are certainly within the mischief for which the second section provides a remedy."

Again I quote from the same opinion :  " The manifest purpose of this is not merely to discourage grade crossings because of their danger to the public as well as injury to the company whose road is crossed, but also to prevent them whenever in the judgment of the court it is reasonably practicable to avoid such dangerous and injurious crossing."   In Perry County

Railroad v. Newport Railroad Company, **150** Pa. 193, Chief Justice PAXSON says, " The time for grade crossings in this state has passed. They ought not to be permitted except in case of imperious necessity. They admittedly involve great danger to life and property." The law as enunciated in these decisions we are obliged to follow. The logic upon which these conclusions rest we are compelled to approve. The admitted rule therefore in this state is that grade crossings are to be avoided where it is " reasonably practicable "—or unless there exists an " imperious necessity " for their construction. This brings us to the consideration of the question whether any other crossing than a grade crossing at this point is reasonably practicable, or an imperious necessity exists for such grade crossing. Such corporations as this Traction Company we have already said do not possess the right of eminent domain. They have no right to occupy private property in the construction of their tracks as other railroad companies have except by direct purchase, and are therefore in the acquisition of such property compelled, if they must purchase, to pay whatever price the individual owner chooses to demand, or forego the construction of their road over it. The court in determining the method and manner of crossing can confer upon them no additional power to that which they already have. They can say they shall cross by an overhead or underground crossing, but they can confer upon them by such decree no power to elevate or depress a public street or road, or confer upon them no right to take private property for such purpose. Such power is not inherent in our courts, and nowhere has it ever been conferred by legislation. Railroads are authorized by the act of the 19th of February, 1849, to change the sita of any portion of any turnpike or public road, and in Penna. R. R. Co.'s Appeal, 128 Pa. 509, it was held that this conferred upon them the power to change the site of a public road where the construction of its roadbed made it necessary either to raise or depress the public road, but no such power has ever been conferred upon street railways. Street railways have no power to elevate or depress a public road for the purpose of crossing a railroad, and the courts cannot grant them such power. The consent of the supervisors for a street railway company to occupy a public road relates only to the use of the road at grade

and this only by virtue of the act of 1889, and because it does not interfere with the use of the road by the public, but so far as it imposes an additional servitude upon the land can be objected to by the adjoining property owners: Penna. R. R. Co. v. Montgomery Pass. Ry. Co., 167 Pa. 62. But no such consent would give them the right to use any portion of the public highway as an elevated railway or to build an elevated bridge upon any portion of the highway to enable them to cross over and above another railroad company's tracks. "Their tracks are located upon the surface of the streets and highways. They are required to conform to the grade of such streets as fixed by the municipal authorities:" Potts v. Elevated R. R. Co., 161 Pa. 396; Com. ex rel. v. Elevated R. R. Co., 161 Pa. 409; Rafferty v. The Traction Co., 147 Pa. 579. The same authorities decide that the municipal authorities can confer upon them no right to elevate their tracks upon a public street. Besides in this case we in passing call attention to the fact that the adjoining and abutting property owners testify not only that they would object to the construction of an overhead crossing in the road but that they would actively resist such construction.

That the courts have the power to compel street railway companies to cross a railroad crossing either above or below grade in a suitable case, without their possessing the right of eminent domain or without their occupying any public street or road, there can be no doubt. They can be compelled to acquire private property by purchase so as to enable them to cross in any way designated by the court. But what the court should do must be determined by the circumstances of the case, and each case must be determined upon its merits. This road is built up with houses on both sides as closely as many streets in towns. To leave the public road would require the purchase of property now built upon and occupied as dwelling houses or as places of business, which would necessitate the expenditure of considerable money, even if they might be acquired by purchase. Not having the right of eminent domain the appellee could not enter upon the property and have it condemned.

Not having the right to build an elevated structure upon the street, they can only cross at grade or by acquiring property by

418    TRACTION CO. *v.* CANAL CO., Appellant.

Opinion of the Court—Dissenting Opinion. [1 Super. Ct

purchase belonging to others, and build an overhead crossing upon the land thus acquired. To compel them to do this at this point would involve them in so great an expense as almost to amount to a denial of their right to cross the railroad tracks. We agree with the learned court below therefore that a grade crossing at this point is such an imperious necessity as justified the decree.

This view of the case disposes of all the questions raised by the assignments of error and they are all dismissed and the decree affirmed. The appellant to pay the costs.

Decree affirmed.

DISSENTING OPINION BY ORLADY, J., April 13, 1896:

I dissent from the opinion of the court filed in these cases, as I regard the grade crossing authorized by decree of the court below of the kind mentioned in Penna. R. R. Co. v. Braddock Electric Ry., 152 Pa. 116, "one of those death traps which should not be permitted to exist in any community." "All the environments operate in making it exceedingly perilous, so exceptionally dangerous, that it is surprising the directors of the traction company are willing to imperil the lives and limbs of their patrons by attempting to cross at grade," and base this conclusion on the facts as specially found by the learned judge who heard the case.

The evidence taken fully supports the findings of fact, and they are not seriously controverted, but to my mind are so conspicuous and vital that the preliminary injunction should have been made perpetual as to the grade crossing, and a decree entered directing an overhead or subway crossing of the railroad tracks.

The court below, through the proven and admitted facts, found:

First. Wyoming avenue in the village of Moosic at the place of crossing is seventy-five feet wide, and the ground is practically level on both sides of the railroad tracks.

Second. On each side of this avenue, on both sides of the railroad there are buildings of different kinds, which obstruct the view up and down the railroad.

Third. The crossing is in the thickly settled portion of the village, and in the immediate vicinity of the railroad station, post office, hotels and stores.

Fourth. The steam railroad of the objecting company, consists of three tracks now in actual use, and a fourth is being constructed to accommodate the increasing business of the company.

The tracks are used by two steam railroad companies; and over which at this point pass daily from one hundred to one hundred and forty trains, forty-two of which are scheduled passenger, and the others unwieldy freight trains; and in addition from six to twenty switching engines daily pass and repass.

Fifth. An overhead crossing is practicable and feasible, the structural part of which would occupy not more than twelve feet in width of the public road surface, and would cost from $3,000 to $6,000—the first amount for a wooden structure, the latter for an iron one.

Sixth. A grade crossing would be a substantial obstruction to the operation of the steam railroad, and would be extremely dangerous to the passengers and employees of both roads, while an overhead crossing would avoid this obstruction and be practically safe.

The final decree permitting the crossing at grade was made solely for the following reasons:

" An overhead crossing is out of the question. While the supervisors and the abutting property owners may consent to the construction of the street car track at grade, they do not consent to an overhead crossing. The street car company is not clothed with the power of eminent domain and they must cross at grade or not at all." Which reason is adopted as controlling, in the opinion of the court as filed, if the crossing is to be on the line of the public road.

I do not agree with the legal conclusions of the learned judge below or my brethren. The supervisors of the township, in their written consent, do not restrict or limit the location or manner of construction of the street railway. Their evident desire was to authorize the building of the road in the way best calculated to further the interest of this company, as they gave it preference over three competing rivals for their favor, and delivered the written consent to build the street railway on the selected route, without even making a record of their official action or keeping a copy of the writing.

Censurable and irregular as their conduct was, they had the power to grant to this company the right to build an electric

railway on the roads of the township. This consent protects the company, and it cannot be refined away by technicalities, to defeat its manifest purpose.

It is not alleged in this bill that any private right of any individual is injured or invaded. No abutting property owner is before the court; while some have been called as witnesses, they do not become parties, and the decree in this case is to be entered without regard to possible controversies which may be raised by strangers to it in other proceedings.

An abutter is interested, as one of the general public;—as owner of the reversionary interest to the center of the highway; —and as a lot owner possessed of the right of ingress and egress to and from the street or road.

If this easement of access is obstructed, or he show some special injury or inconvenience resulting from the construction or operation of the road, he is not without remedy at law: May v. Carbondale T. Co., 167 Pa. 343; Winner v. Graner, 173 Pa. 43.

The use of the street, and the abuse of the franchise under the facts of this case are at all times within the control of the courts, and any impediment to the safe and proper use of a four track trunk line is a matter of public concern.

The street railway company has a statutory right to cross in some manner, but neither its desire nor judgment is conclusive as to which way will best preserve and protect other interests equal to its own.

A grade crossing is a fruitful source of litigation and a certain menace to life and property.

The stub switch, electric bell or automatic gate, have each so frequently failed in performance of expected duty as to furnish but slight protection to the traveling public.

When this evil is once fastened upon a railroad it becomes a fixture for all time. If it is to be avoided at all, it must be done now. Every argument urged against it will have additional weight with each coming year; this village of to-day is likely to be a thriving center of industry of the near future.

The objection of the Street Railway Company to an overhead crossing is purely a financial one, which in this case would be a mere trifle when compared with loss of life, injury to person, damage and costs, reasonably to be expected from a crossing admittedly so dangerous.

A railroad company will not be permitted to interfere with the franchise of another railroad merely to avoid expense; Perry Co. R. R. v. R. R. Co., 150 Pa. 193.

It is now past controversy that the system of electric railways is an every day necessity, and the rapid increase of their number and mileage is conclusive proof of their popularity and financial success.

The control of the courts over grade crossings of two railroads applies with equal force, when a traction or trolley company seeks to cross a steam railroad.

There is no doubt electric railways are within the purview of the act of June 19, 1871.   They are certainly within the mischief for which the second section provides a remedy.

It was enacted before this system of travel had assumed its present magnitude, but it has been held to apply to the street electric railways constructed under the act of May 14, 1889 : P. R. R. Co. v. Braddock Electric Ry., 152 Pa. 116.

The frequent and vigorous condemnation of grade crossings by the Supreme Court of this state furnishes abundant argument against their existence, except in the rarest instances, where no other means can reasonably be adopted.

The evident intendment of the statute is to prevent grade crossings.   Their construction should now and henceforth be discouraged.   They ought not to be permitted except in cases of imperious necessity : P. R. R. Co. v. N. & S. V. R. R. Co., 150 Pa. 193.

The necessity which nearly a quarter of a century ago moved the legislature to enjoin these duties on the courts, is now greater than ever.   We have had occasion to emphasize the importance of the ever increasing and now almost imperative necessity of prohibiting grade crossings.   It is unnecessary to enlarge upon the many considerations that are opposed to grade crossings and the comparatively few that can be even plausibly urged in their favor:  A. R. R. Co. v. C. R. R. Co., 160 Pa. 623.

The act of June 19, 1871, P. L. 1360, I think, confers as full power to direct an overhead or subway crossing, when the one at grade is of the kind described in this case, as to impose restrictions and conditions on the manner of passing at grade.

The first manner of crossing would be a structure of legal expediency adjudged to be the best means of protecting the

public and preserving the franchise rights of both companies; the other asserts control over corporate property, directing how and when it may be used, with the same end in view, but with much of concurrent risk and doubtful success.

The first would not be more of an invasion in kind, of the public street or road, than municipalities confer in authorizing the placing of wires and poles of telegraph, telephone and trolley companies or conduits of traction roads.

The second section of the act imposes on the courts of equity the duty " to ascertain and define by their decree, the mode of such crossing which will inflict the least practical injury upon the rights of the company owning the road which is intended to be crossed; and if in the judgment of such court it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade."

There are but three " modes " by which the trolley can be put athwart the tracks of the steam railroad, 1st, at grade; 2d, by an overhead structure; or 3d, through a subway.

The word " mode " is synonymous in this connection with method, manner, way. Century Dict., title, " mode." Bouvier's, L. Dict., title, " mode." Anderson's L. Dict., title, "mode;" and as used, evidently contemplates a manner of acting or doing, a way of performing or effecting, a selection or legal preference of one mode or manner as opposed to others, and is coupled with the statutory direction that whenever it is reasonably practicable, the grade crossing is to be prevented.

The court found as a fact that the overhead structure was feasible at merely nominal cost as compared with railroad constructions.

The objection to a subway, I am confident, would readily yield to the engineering skill in the employ of either company, at possibly somewhat greater expense, but aside from the fact that mere expense shall not stand in the way of such changes, that argument could not be urged with much force here, as this traction company selected just such a way of crossing these railroad tracks at Spring street, not more than half a mile distant, when the court refused a grade crossing under this same proceeding.

The depressed tracks with properly guarded approaches, would relieve the crossing of all danger, and conserve all other interests.

An overhead structure at this point would not be in conflict with Potts v. Quaker City E. R. R. Co., 161 Pa. 396, in which a chartered steam railroad did not proceed under the general railroad laws to acquire a legal location for its line: Or Com. v. N. E. E. R. Co., 161 Pa. 409, a similar case; in each of which an attempt was made to operate an elevated street passenger railway on the length of the highway under a charter granted under the general railroad law of 1868.

To say that a new mode of passage shall be banished from streets or roads, no matter how much the general good may require it, simply because they were not so used in the days of Blackstone, would hardly comport with the advancement of the present age.

When land is taken for streets or roads it is appropriated for all purposes of a street or road, not merely for the purpose to which streets were formerly applied, but those demanded by new improvements and new wants: Cooley v. Const. Lim. (6th ed.) page 683.

Franchises are always granted subject to the police power of the state. The public welfare requires the railroad business to be open to competition as far as possible. The grant to build a railroad between given termini created no obligation by the state to not thereafter grant the right to build other railroads that with their tracks shall cross the state in different directions and thus pass over the first located company: Perry Co. R. R. Co. v. R. R., 150 Pa. 193 ; P. R. R. Co. v. Electric Ry., 152 Pa. 116.

And under the provision of the act of 1871, the rights of the traction road are secondary to the rights of the steam railroad, by reason of its first location: Pittsburg & C. R. R. v. S. W. Penna. Ry., 77 Pa. 173 ; Perry Co. R. R. Co. v. R. R., 150 Pa. 193 ; Booth on Street Ry. sec. 122, page 179.

The construction of the franchise is to be most favorable to the public, and is not to be impaired by judicial decision so as to make the grant a nullity. Authority to use the means necessary to attain these objects must therefore be supplied by necessary implication, as charters of incorporation frequently prescribe only the main objects of the companies formed under them: 1 Morawetz on Corp. (2d ed.) sec. 320 ; 1 Waterman on Corp. sec. 138 ; Endlich on Statutes, sec. 418.

In a conflict between a railroad company and a turnpike com-

pany, touching a provision in a charter prescribing the manner in which it may cross the road of the latter, it was said, " In such cases some interference by each of the rights of the owner is unavoidable, and when legislative provisions have been made with reference to such interference such construction should be put upon them, if possible, as that the powers and privileges of each shall be no further limited or restrained than may be reasonably necessary to accomplish the public purpose for which it was established:" Turnpike Corp. v. Eastern R. Co., 23 Pick. (Mass.) 326; 4 Thompson's Commts. on Corp. sec. 5664.

The rights of the public are not limited to a mere right of way, but extend to all beneficial and legitimate street uses, such as the public may from time to time require : Rafferty v. Traction Co., 147 Pa. 579.

The practicability of the substitute for the grade crossing depends almost entirely on the circumstances of each particular case : Northern Cent. Ry. App., 103 Pa. 626 ; Altoona etc. R. Co. v. T. & C. R. R. Co., 160 Pa. 623.

In P. & C. R. Co. v. S. W. P. R. R. Co., 77 Pa. 173, a grade crossing was refused because,

First. It is not the one which will inflict the least practicable injury on the rights of the appellant; and

Second. It is reasonable and practicable to avoid a grade crossing.

In P. C. R. R. Co. v. N. & S. V. R. R. Co., 150 Pa. 193, a grade crossing was perpetually enjoined, though it was a local road in a sparsely settled country, with but limited amount of business and few trains, and an overhead crossing would necessitate an expenditure of $40,000, almost one half of the authorized capital stock of the company.

In the P. R. R. Co. v. B. E. Co., 152 Pa. 116, a crossing at grade was refused, with facts as meritorious as the ones presented here.

In the A. R. Co. v. T. & C. R. R. Co., 160 Pa. 623, four grade crossings were refused and overhead ones required at each location, the expense of either being much greater than in this case, and each being in country districts as compared with this.

In view of these authorities, I feel the facts of this case should move the court to refuse the right to cross at grade, and by its decree, ascertain and define another mode of crossing.

BEAVER, J., concurs in the conclusions reached in this opinion.